# Illinois Official Reports

## Appellate Court

***Palm v. 2800 Lake Shore Drive Condominium Ass'n*,
2014 IL App (1st) 111290**

| | |
|---|---|
| Appellate Court Caption | GARY PALM, Plaintiff-Appellee, v. 2800 LAKE SHORE DRIVE CONDOMINIUM ASSOCIATION, an Illinois Not-for-Profit Corporation; BOARD OF DIRECTORS OF THE 2800 LAKE SHORE DRIVE CONDOMINIUM ASSOCIATION; and KAY GROSSMAN, Individually and as President of the Board, Defendants-Appellants. |
| District & No. | First District, Fifth Division<br>Docket No. 1-11-1290 |
| Filed | May 2, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action filed by a condominium unit owner challenging the actions of the board of directors of the association, the trial court properly considered the count of plaintiff's amended complaint alleging that the board was "doing business in closed session," even though that count in the initial complaint had been dismissed with prejudice, since the initial count was dismissed without consideration of the merits and the dismissal should not have been with prejudice; and furthermore, the trial court properly found the board violated the Condominium Property Act and/or the association's declaration and bylaws by, *inter alia*, holding meetings in closed working or executive sessions, conducting votes by email and canvassing board members, authorizing or allowing litigation without approval in a meeting open to all unit owners, and further, the court properly rejected the board's reliance on the business judgment rule and granted plaintiff various forms of declaratory and injunctive relief. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 00-CH-0679; the Hon. Sophia Hall, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Orum & Roth, LLC, of Chicago (Mark D. Roth, of counsel), for appellants. |
| | Gary Palm, of Chicago, appellee *pro se*. |
| Panel | JUSTICE PALMER delivered the judgment of the court, with opinion. <br> Justice McBride concurred in the judgment and opinion. <br> Presiding Justice Gordon specially concurred, with opinion. |

## OPINION

¶ 1 Plaintiff Gary Palm filed an action against defendants the 2800 Lake Shore Drive Condominium Association (the association), the board of directors of the association (the board) and Kay Grossman (Grossman), individually and as board president (collectively, defendants) seeking declaratory and injunctive relief for assorted violations of the association's declaration and bylaws, the Illinois Condominium Property Act (the Condominium Property Act) (765 ILCS 605/1 *et seq.* (West 2004)) and the General Not For Profit Corporation Act of 1986 (the Not for Profit Act) (805 ILCS 105/101.01 *et seq.* (West 2004)). The court granted partial summary judgment to Palm on several issues and issued declaratory and injunctive orders. After a hearing, it found for Palm on various remaining issues and again entered declaratory and injunctive relief. Defendants raise 12 issues on appeal. We affirm.

¶ 2 BACKGROUND

¶ 3 Palm owns a condominium unit in the 2800 Lake Shore Drive condominium building in Chicago and has for many years.[1] He served on the board of directors of the condominium

---

[1]In defendants' brief, they inform the court as follows:

"This lawsuit has been the subject of a prior appeal, and an original record on appeal was filed in this case on November 7, 2008. The original record on appeal is cited as 'R____.' A second record on appeal relating to documents filed after the first appeal was filed on September 19, 2011, and is referred to in this brief as 'R2___.' A Supplemental Record on Appeal was filed on January 17, 2011, and is referred to as 'SR____.' "

association from 1992 to 1998. The association is a not-for-profit corporation formed pursuant to the Not for Profit Act (805 ILCS 105/101.01 *et seq.* (West 2004)). It is governed by the Condominium Property Act (765 ILCS 605/1 *et seq.* (West 2004)). The governing document for the association is the "Declaration of Condominium Ownership and of Easements, Restrictions, Covenants and By-Laws of 2800 Lake Shore Drive Condominium Association" (the declaration).

¶ 4　　In 1999, Palm requested that the board produce documents related to the building's management. In 2000, when the board refused to produce the documents, Palm filed a complaint against defendants in the circuit court of Cook County seeking to examine and copy the documents. The court dismissed the complaint without prejudice.

¶ 5　　Palm then filed a four-count first amended complaint. In count I, he asserted that the board violated section 18(a)(9) of the Condominium Property Act (765 ILCS 605/18(a)(9) (West 2000)) by having discussions of condominium business and taking action on matters at meetings closed to unit owners, making decisions by mail vote, and failing to vote in open meetings on issues discussed and actions taken in executive sessions. He cited no specific instances demonstrating the board's alleged violations. Palm requested a declaration that the board cannot take any action without a vote at a board meeting open to attendance by unit owners and that all discussion of association business, except for the three matters specifically excepted in section 18(a)(9), must be conducted by the board at open meetings.

¶ 6　　In count II, again without factual support, Palm asserted the association violated the Condominium Property Act when the board president exceeded her authority, failed to call sufficient meetings of the board to conduct all necessary business and exceeded "her powers" at open board meetings and dominated the discussion. He requested a declaration that Grossman exceeded her authority by taking actions without board approval and improperly imposed her views on the board at meetings.

¶ 7　　In count III, without factual support, Palm asserted that the board president and association counsel improperly limited board member's access to all documents and records of the association and these limitations interfered with the board members' performance of their fiduciary duties to the association and its members. He requested a declaration that board members are entitled to access all records and documents of the association upon request within a reasonable period of time without the need to state a purpose or pay costs or fees associated with such requests.

¶ 8　　In count IV, Palm asserted that the board had improperly denied his repeated requests to examine and copy assorted association documents and records in violation of statute,

---

The only record defendants filed in this appeal is a four-volume record filed on September 19, 2011. Defendants filed neither the "original record on appeal *** filed *** on November 7, 2008" nor "a supplemental record *** filed on January 17, 2011." The reference to the supplemental record is especially puzzling given that the notice of appeal in this case was not filed until May 2011, apparently after defendants filed the supplemental record. Nevertheless, given that this court may take judicial notice of matters of public record, we obtained the 22-volume "original record on appeal *** filed *** on November 7, 2008" from the circuit court and will consider it.

ordinance and association declaration and bylaws. He requested that the court order the association to allow him to inspect and copy the requested documents.

¶ 9 Defendants moved to dismiss. They argued that count I should be dismissed as it failed to state a claim on which relief could be granted. Defendants pointed out that Palm failed to plead actual facts regarding any matters on which the board had allegedly voted by mail or to identify any issues that the board had allegedly improperly discussed and acted on in executive sessions rather than open meetings. They asserted that Palm had not presented an actual controversy for the court's review but rather was requesting an order restating the law set forth in section 18(a)(9) of the Condominium Property Act. Defendants argued similarly with regard to count II, asserting that Palm failed to state a claim for which legal relief could be granted because he failed to set forth Grossman's alleged violations with specificity and failed to allege any law applicable to his vague allegations.

¶ 10 Defendants argued that count III should be dismissed as (a) Palm's request for a declaratory finding and injunction awarding him unfettered access to association documents and records was contrary to the Condominium Property Act and the Chicago condominium ordinance, (b) Palm failed to plead actual facts in count III, and (c), since he was asking for an opinion of the rights of board members and he was no longer a board member, his request for a declaratory judgment was moot and he was merely requesting an advisory opinion. Defendants asserted count IV should be dismissed because Palm sought relief almost identical to that raised in his previously dismissed complaint and because the relief Palm requested was contrary to the Condominium Property Act.

¶ 11 Both parties filed additional memoranda and, at the court's request, supplemental briefs related only to count IV, addressing the question of whether the board is required to produce association documents under the City of Chicago condominium ordinance. On December 11, 2000, the court issued an opinion and order stating that, after considering the parties' memoranda, exhibits, case material and oral argument, it concluded that Palm was "required to assert a proper purpose [as a board member requesting documents] and has failed to do so, and that all four counts of the First Amended Complaint should be dismissed."

¶ 12 The court's opinion specifically addressed its dismissal of count IV in detail, finding that the Not for Profit Act required that association members must state a proper purpose in order to be allowed to inspect association records, this requirement preempted the City of Chicago ordinance or the declaration which might provide otherwise. It held that Palm failed "to allege any facts that would support that a proper purpose has been stated." The court then stated that Palm did not "support his claim with any factual evidence, but only conclusory language. Accordingly, all four counts are deficient and the defendant is entitled to dismissal." The court dismissed the complaint and granted Palm leave to file a second amended complaint.

¶ 13 Palm filed a motion to reconsider. He challenged the court's findings regarding his count IV claim requesting production of documents. He also pointed out that the court had "apparently concluded that the Not for Profit Act's document production provision controlled all the other issues raised in Counts I-III, although these three issues were not discussed." He stated that the issues raised in counts I, II and III were unrelated to access to documents and had been argued and briefed on other grounds. Palm argued that the court's decision should

- 4 -

have explained its reasons for the dismissal of counts I, II and III because "otherwise [Palm] has no idea how to amend the complaint further or whether to appeal without amending his complaint again." He asserted that rendering a decision without giving reasons violated his "due process rights to have his claim decided in a way that makes them susceptible for judicial review."

¶ 14    On March 21, 2001, the court held a hearing on the motion to reconsider and defendants' response thereto. The transcript of the proceeding shows that the entirety of the argument was directed to count IV, addressing conflicts between the Chicago condominium ordinance, the Condominium Property Act and the Not for Profit Act, all of which have differing provisions relating to a board's duty to produce documents. The court issued a verbal decision. It granted the motion to reconsider and stated that, upon reconsideration, it again granted the motion to dismiss.

¶ 15    The court first addressed the dismissal of count IV in detail and dismissed the count without prejudice. The court next addressed counts I and II, stating only that the counts "ask for an advisory opinion" and dismissing them with prejudice. It lastly dismissed count III with prejudice, finding that the count "asks for a declaratory judgment, but declaratory judgment need not be granted where other relief [here under count IV] will resolve the problem." The court gave Palm leave to amended count IV, noting that Palm could "of course" replead counts I, II and III in his second amended complaint for purposes of preserving the record. It declined to make an Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) finding that there was no just reason to delay appeal on counts I, II and III.

¶ 16    On April 3, 2001, the circuit court entered a written decision, "[a]fter having reconsidered its December 11, 2000, order, *** for the reasons stated in court at the March 21, 2001, hearing," dismissing counts I, II and III of the first amended complaint with prejudice. It dismissed count IV without prejudice and granted Palm leave to file a second amended complaint.

¶ 17    Citing new authority, Palm filed a motion to reconsider the March 21, 2001, oral and April 3, 2001, written decisions or, in the alternative, seeking an Illinois Supreme Court Rule 304(a) finding that there was no just reason to delay appeal. The court denied the motion to reconsider as to counts I and II. It granted the motion as to counts III and IV. Upon reconsideration, the court again dismissed count III with prejudice, finding that Palm failed to allege that he had standing to litigate the rights of board members since he did not allege that he was a member of the board.

¶ 18    After a detailed examination of count IV, the court held that count IV stated a cause of action and vacated its earlier dismissal of count IV. The circuit court subsequently granted summary judgment to Palm on count IV in 2003, ordering the association to produce the requested documents and awarding Palm attorney fees. Defendants appealed the circuit court's decision. The decision was affirmed on appeal in *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2013 IL 110505, and is not at issue here.

¶ 19    In 2004, Palm filed a second amended complaint. In count I, he claimed that the association was so poorly managed that it was subject to judicial dissolution under sections 112.50(a)(2), (a)(3) and (a)(4) of the Not for Profit Act (805 ILCS 105/112.50(a)(2)-(4) (West 2004)). He

asserted that defendants repeatedly acted beyond the scope of their corporate and legal authority by, in relevant part, violating the open meeting requirements of section 18(a)(9) of the Condominium Property Act by conducting board business in working sessions not open to unit owners, and conducting votes by email and telephone canvassing. He requested, under section 112.55 of the Not for Profit Act, as an alternative to dissolution, the appointment of a custodian or provisional director of the association in order to implement reform. He additionally requested, in lieu of dissolution, an order declaring and enjoining violations of the rights and obligations related to open meetings, board minutes, recording of board meetings, board member access to documents, unit owners' access to documents, frequency of board meetings, reserve fund accounting, approval of capital expenditures in excess of $25,000, deposit of association funds in uninsured accounts, promulgation of "rules and regulations," handicap access, audits, board member conflicts of interest, property manager conflicts of interest, notice of related-party transactions, actions authorized by less than a board quorum and board election activities. He also requested that Grossman be removed from the board and that the association disclose why it destroyed the 1998 board election materials.

¶ 20 In count II, Palm sought the same declaratory and injunctive relief as in count I, but pursuant to section 2-701 of the Illinois Code of Civil Procedure (735 ILCS 5/2-701 (West 2004)), section 103.15 of the Not for Profit Act and the equitable powers of the court. In count III, he sought a court order compelling immediate production of specific documents and a finding of contempt against defendants for their failure to comply with a court order to produce the documents. In count IV, brought pursuant to the Chicago condominium ordinance, the Condominium Property Act, the Not for Profit Act and the declaration, Palm sought an order compelling immediate production of certain documents the board had refused to provide at his request. In count V, he charged Grossman with constructive fraud and ultra vires acts and sought her removal from the board.

¶ 21 Defendants' moved to dismiss the second amended complaint. The court denied the motion.[2]

¶ 22 In January 2005, Palm filed a five-count third amended complaint. Counts I and II mirrored counts I and II of the second amended complaint. Palm "deleted" count III. In count IV, Palm requested an order compelling production of assorted documents under the Chicago condominium ordinance, the Condominium Property Act, the declaration and the Not for Profit Act. In count V, Palm sought the removal of Grossman from the board as he had in count V of his second amended complaint but with numerous factual assertions regarding her alleged fraudulent conduct and breach of fiduciary duty to the association and unit owners.

¶ 23 Defendants filed an answer to the third amended complaint, four affirmative defenses and a counterclaim. The affirmative defenses asserted defendants were not liable to Palm because (1)

---

[2]If there is a copy of the motion to dismiss the second amended complaint and the court's order denying the motion in the record, neither party cites to it and we do not find it specifically referenced in the appendix to the record. It is not our role to parse through a 26-volume record in search of these documents. Accordingly, we are left with only the information that defendants filed the motion to dismiss and the court denied it.

they had always relied on and acted under advice of counsel, (2) they were immunized by an exculpatory clause in the declaration, (3) the five-year statute of limitations in section 13-205 of the Illinois Code of Civil Procedure (735 ILCS 5/13-205 (West 2004)) barred Palm's claims and (4) collateral estoppel and *res judicata* barred many of Palm's claims. Defendants' counterclaim asserted that Palm's contention that the association qualified for judicial dissolution was made vexatiously, arbitrarily and not in good faith and defendants were, therefore, under section 112.55(f) of the Not for Profit Act (805 ILCS 105/112.55 (West 2004)), entitled to attorney fees and costs.

¶ 24 Palm moved for "partial declaratory and injunctive summary judgment." He argued, in relevant part:

(1) The board was violating the declaration by discussing and acting on business at closed meetings not open to unit owners, specifically by its making decisions in closed sessions regarding (a) whether to commence or defend litigation, (b) employment and personnel matters, (c) unit owner misconduct and (d) unit owner delinquency.

(2) The board was violating the declaration and the Not for Profit Act by making decisions without a majority vote or even a formal vote, specifically by (a) delegating responsibility for deciding on bids and contract to the management company and an unofficial three-member committee, (b) allowing some board members to approve waivers of rights of first refusal by email or telephone rather than requiring the decisions to be made by the entire board at an open meeting, (c) making capital expenditures in excess of $25,000 without obtaining unit owner approval, (d) allowing the management company to deposit funds in bank accounts not fully insured by the Federal Deposit Insurance Corporation (FDIC) and (e) making expenditures in excess of $25,000 without a vote by and approval of unit owners.

¶ 25 Palm requested that the court enter a declaration that the enumerated acts by defendants were contrary to the law and an injunction providing for adherence to the applicable laws. He also requested a declaration that the association qualified for judicial dissolution or the imposition of alternative remedies such as the appointment of a custodian or provisional director, dismissal of the association's attorney and management company, retaining of an accountant to conduct an audit and the termination of assorted contracts.

¶ 26 On July 18, 2008, the court granted Palm's revised motion for partial summary judgment in part. It found:

(1) defendants violated the declaration by "admittedly 'doing business' at closed meetings," which included discussing association matters and soliciting input by email, canvassing board members by phone and deciding matters in closed "working" sessions prior to presentation of the matter for a vote in an open meeting;

(2) the board did not have the authority under the declaration to enter into contracts without the approval of the entire board and violated the Not for Profit Act by failing to provide for committees to conduct board business by amending the declaration to allow the management company to consult three officers and obtain the approval of only one for contracts between $10,000 and $100,000, and

(3) the board violated the declaration and the Not for Profit Act by undertaking to defend the instant case without taking a vote in an open meeting as to whether to pursue the litigation.

The court denied summary judgment as to all other claims.

¶ 27 In opposition to the motion for summary judgment, defendants had argued that the court's April 3, 2001, order dismissing counts I, II and III of the first amended complaint with prejudice required denial of the motion for summary judgment because the dismissals were dispositive of many of the claims in the third amended complaint. Palm responded that the court previously had ruled against defendants on this same argument when defendants presented it in their motion to dismiss the second amended complaint. Addressing these arguments, the trial court stated that the reason for the court's prior dismissal with prejudice, which had been entered by another judge, was "not clear from the record." It stated that it was, therefore, "unable to conclude that the prior dismissal was, in fact, on the merits and this court's finding against defendants in denying the motion to dismiss the Second Amended Complaint is a basis to deny summary judgment." The court also denied defendants' motion to dismiss the third amended complaint on the basis of the statute of limitations, finding that the allegations in the second and third amended complaints "relate back" to the original and first amended complaints and were, therefore, not barred by the statute of limitations.

¶ 28 On August 26, 2008, the court issued a declaratory and injunctive order based on the July 18, 2008, decision. It enjoined defendants from addressing, acting on, voting on, and making decisions on affairs of the association in any gathering in which a quorum of the board is present (in person, by telephone or otherwise) unless the gathering is open to any unit owner and prior notice has been provided to all unit owners. It also enjoined defendants from authorizing contacts, authorizing or allowing litigation, exercising waivers of the association's right of first refusal on unit purchases, approving compensation for employees and permitting the management company or any other entity to select or enter into a contract on behalf of the association without a board vote in a meeting open to all unit owners for which prior notice had been provided to the owners and a quorum of the board was present.

¶ 29 On September 10, 2010, after a four-day hearing, the court entered judgment on the remaining claims in Palm's third amended complaint. It held that defendants breached their fiduciary duty by failing to strictly comply with the requirements of the declaration and the condominium property act in their handling of the association finances. It found that defendants failed to itemize reserves in the budget, failed to credit unit owners with surpluses, commingled operating and reserve expenses and allowed funds to be deposited in bank accounts in excess of the FDIC insured limit. The court also found that the board failed to provide written notices of board meetings as required by the declaration and failed to present conflicts of interest to the unit owners for approval. It found against Palm on the remaining issues.

¶ 30 Addressing defendants' affirmative defenses, the court found that there was no evidence that defendants acted on advice of counsel and that the statute of limitations did not bar the actions. With regard to defendants' assertion that the exculpatory clause in the declaration shielded them from liability unless their acts or omissions were grossly negligent or fraudulent,

- 8 -

the court found that none of defendants' violations constituted fraud. It did, however, find that defendants' conduct was "grossly negligent in that they intentionally failed to act in the face of a known duty, demonstrating a conscious disregard for their duties."

¶ 31 The court denied defendants' counterclaim seeking attorney fees and expenses under the Not for Profit Act for Palm's alleged bad faith in raising grounds for dissolution of the association in count I of his third amended complaint. The court held that, although the evidence did not show oppressive or fraudulent conduct by defendants or waste of corporate assets, it did show that defendants breached their fiduciary duties as managers of the building by violating the clear dictates of the declaration and the Condominium Property Act. It found, therefore, that "Palm did not act arbitrarily, vexatiously or not in good faith in filing the complaint" such that an award of fees was warranted under the statute.

¶ 32 On October 25, 2010, the court issued a declaratory judgment enumerating its findings based on the September 20, 2010, decision. The court found, in relevant part, that defendants violated the declaration by (1) putting operating revenue surpluses into the reserve fund rather than applying the surpluses as an adjustment to the unit owners' assessment installments, (2) failing to designate in the annual budget an itemization and allocation for reverse funds, (3) commingling operating and reserve funds, (4) failing to mail each unit owner notices of board meetings and (5) failing to enforce the requirement in the management agreement requiring the managing agent to deposit all funds in an FDIC-insured account.

¶ 33 On April 5, 2011, the court issued an injunction based on its September 20, 2010, decision. It enjoined defendants from (1) failing to apply any net shortage or excess of operating income identified in the association's annual accounting as an adjustment to the installments due from unit owners, (2) failing to provide an annual budget for the reserve account that itemizes and allocates reserve funds, (3) commingling reserve funds with operating funds and using operating funds to pay reserve expenses, (4) allowing the managing agent to place money exceeding the FDIC insurance deposit limits into uninsured bank accounts and (5) failing to mail notices of board meetings to all unit owners. The court stated that the order was a final order disposing of all matters.

¶ 34 Defendants filed a timely notice of appeal on May 2, 2011. They appeal from (1) the trial court's July 18, 2008, order granting partial summary judgment to Palm on his third amended complaint and its August 26, 2008, order granting declaratory and injunctive relief based on the July 18, 2008, order; and (2) its September 10, 2010, order entering judgment on the remaining claims in the third amended complaint and its October 25, 2010, declaratory order and April 5, 2011, injunction granting relief based on the September 10, 2010, order.

¶ 35 ANALYSIS
¶ 36 I. The July 18, 2008, Order and August 26, 2008, Order
¶ 37 Defendants raise six issues challenging the court's July 18, 2008, order granting partial summary judgment to Palm on his third amended complaint and its August 26, 2008, order entering declaratory and injunctive relief based on the July 18, 2008, findings.

Defendants first assert that the trial court's previous dismissal with prejudice of counts I, II and III of Palm's first amended complaint precluded further litigation related to the same issues raised in plaintiff's motion for partial summary judgment on the third amended complaint and the court erred in considering, and deciding, those issues again. However, defendants specifically argue only that the issues addressed by the court's July 18, 2008, ruling regarding "doing business in closed session" had been previously raised by Palm in count I of his first amended complaint and dismissed with prejudice. Since defendants do not argue the specifics of how the dismissal with prejudice of counts II and III of the first amended complaint relates to the court's findings on the motion for summary judgment, we will not address the effect of the dismissal with prejudice of counts II and III.[3]

Defendants do not use the term "*res judicata*." However, their argument that the court's dismissal with prejudice of counts I, II and III of the first amended complaint precludes the court's consideration of the same issues raised in the third amended complaint and the motion for summary judgment directed thereto is clearly encompassed by the doctrine of *res judicata*. Under the doctrine, "a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action." *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334 (1996). "The doctrine extends not only to what was actually decided in the original action, but also to matters which could have been decided in that suit." *Id.* at 335. "In other words, the bar extends not only to what has actually been determined in the former proceedings, but also to any other matters properly involved by the subject matter which could have been raised and determined." *Best Coin-Op, Inc. v. Paul F. Ilg Supply Co.*, 189 Ill. App. 3d 638, 650 (1989).[4]

In order for the doctrine of *res judicata* to apply, there must be (1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) an identity of cause of action and (3) an identity of parties or their privies. *Rein*, 172 Ill. 2d at 335. The second and third requirements for *res judicata* are met here with respect to the "open meetings" counts in the first and third amended complaints and the parties do not challenge their existence. The parties

---

[3]Indeed, a cursory examination of count II of the first amended complaint, which requests a declaration that Grossman exceeded her authority as board president by taking actions without board approval and improperly imposed her views on the board at meetings, shows this issue was not raised in the motion for summary judgment. The issue raised in count III of the first amended complaint, which requests a declaration that board members are entitled to reasonably timely access to all association records without having to specify a purpose for the request or pay costs associated therewith, was raised in the motion for summary judgment. However, the court did not specifically address this issue in its decision on the motion for summary judgment. The summary judgment order specified that the court denied summary judgment "as to all other claims not specifically ruled on." Accordingly, the court denied summary judgment as to count III and the question is moot.

[4]"Furthermore, where the estoppel applies, it operates without regard for whether the prior adjudication was correct or erroneous." *Best Coin-Op, Inc.*, 189 Ill. App. 3d at 650.

are identical in both complaints and there is an identity of causes of action between the complaints. In count I in both complaints, Palm asserts that the board violated the open meeting requirement of section 18(a)(9) of the Condominium Property Act by discussing condominium business and taking action on such matters at meetings closed to unit owners or by email. In the first amended complaint, he sought a declaration that the board cannot take any action without a vote at a board meeting open to attendance by unit owners and that all discussion of association business, except for the three matters specifically excepted in section 18(a)(9), must be conducted by the board at open meetings. He sought similar relief in the third amended complaint, seeking an order declaring and enjoining violations of defendants' section 18(a)(9) obligation to discuss board business and vote on matters in meetings open to all unit owners and requiring defendants to conduct board business and vote in meetings open to all unit owners. Clearly, the second and third elements of *res judicata* are met.

¶ 42 The question here is whether the first requirement of *res judicata* is met. This determination depends on whether the dismissal with prejudice of count I of the first amended complaint was a final judgment on the merits. *Rein*, 172 Ill. 2d at 335. A case is decided on the merits where it is decided on "the real or substantial grounds of [an] action or defense as distinguished from matters of practice, procedure, jurisdiction, or form." (Internal quotation marks omitted.) *Johnson v. Du Page Airport Authority*, 268 Ill. App. 3d 409, 418 (1994). "A judgment is on the merits in the sense that it may be pleaded in bar of a subsequent action where it amounts to a decision as to the respective rights and liabilities of parties based on the ultimate facts or the state of the facts disclosed by pleadings or evidence, or both, and on which the right of recovery depends irrespective of formal, technical or dilatory objections or contentions." *Fried v. Polk Brothers, Inc.*, 190 Ill. App. 3d 871, 878 (1989).

> "Where there is no adjudication on the merits, a dismissal should be granted *without* prejudice, as opposed to granting dismissal *with* prejudice. [Citation.] The effect of a dismissal *without* prejudice is to render the proceedings a nullity and leave the parties in the same position as if the case had never been filed. [Citation.] Conversely, 'a dismissal *with* prejudice constitutes an adjudication on the merits which bars the plaintiff from maintaining another action on the same claim.' " (Emphases in original.) *Johnson*, 268 Ill. App. 3d at 418 (quoting *Rogaris v. Oliver*, 246 Ill. App. 3d 876, 881 (1993)).

¶ 43 The trial court dismissed count I of the first amended complaint with prejudice, indicating that the dismissal was on the merits. *Johnson*, 268 Ill. App. 3d at 419. However, we must look at the actual reason underlying the court's decision to dismiss count I with prejudice to determine whether the dismissal was actually on the merits. See *id*. at 418-19 (holding that trial court's dismissal of complaint with prejudice was not a judgment on the merits as the trial court's decision was based on its finding that the case was moot, and a mootness finding is not a decision on the merits).

¶ 44 In count I of Palm's first amended complaint, he requested a judicial declaration that the board cannot take any action without a vote at board meetings open to attendance by unit owners and that all association business, except for matters specifically excluded by the Condominium Property Act, must be conducted at board meetings open to attendance by unit

- 11 -

owners. The court held that count I "asks for an advisory opinion" and dismissed the count with prejudice."[5] The court's dismissal with prejudice was not a judgment on the merits.

¶ 45    "Illinois courts may rule on actual controversies only." *Smart Growth Sugar Grove, LLC v. Village of Sugar Grove*, 375 Ill. App. 3d 780, 789 (2007). Specifically, a complaint for a declaratory judgment requires an " 'actual controversy.' " *Id.* (quoting 735 ILCS 5/2-701 (West 2004)). " 'A declaratory judgment action is not intended to permit moot or hypothetical cases, or to enable parties to secure advisory opinions or legal advice from the court with respect to anticipated future difficulties ***.' " *Byer Clinic & Chiropractic, Ltd. v. State Farm Fire & Casualty Co.*, 2013 IL App (1st) 113038, ¶ 17 (quoting *Weber v. St. Paul Fire & Marine Insurance Co.*, 251 Ill. App. 3d 371, 373 (1993)). "A plaintiff seeking declaratory judgment must specify all facts necessary to justify the unusual relief sought. If the complaint does not state facts sufficient to show ripeness, dismissal is proper." *Schwanke, Schwanke & Associates v. Martin*, 241 Ill. App. 3d 738, 748 (1992). "[I]f the harm that a plaintiff claims is merely speculative or contingent, the claim is unripe and a court should not decide it." *Smart Growth Sugar Grove, LLC*, 375 Ill. App. 3d at 789.

¶ 46    Here, the harm was entirely speculative. Palm's first amended complaint neither alleged specific instances in which defendants had decided association matters in sessions closed to unit owners and by voting by email or telephone canvassing nor asserted that Palm was injured as a result of these alleged infractions of the Condominium Property Act. The complaint provided no factual basis on which the court could determine that the board had violated the open meetings requirement of that Act, let alone a basis on which the court could issue the requested declaration (or, more accurately, an injunction) that the board cannot take any action without a vote at board meetings open to attendance by unit owners and that all nonexcepted association business must be conducted at board meetings open to attendance by unit owners. In other words, count I of the first amended complaint did not specify all facts necessary to justify the requested declaration or provide an actual controversy for the court's review and

---

[5]The court addressed the dismissal of count I of the amended complaint three times. It first dismissed count I with prejudice on December 11, 2000, without comment. Next, after reconsideration, it dismissed count I with prejudice again, initially during the March 21, 2001, hearing on Palm's motion to reconsider and then in its April 3, 2001, written order based on the March 21, 2001, verbal holding. Lastly, on Palm's motion to reconsider the March 21, 2001, and April 4, 2001, orders, the court without comment denied the motion to reconsider the dismissal of count I. There is no reason evident for the court's original dismissal with prejudice of count I. However, during the March 21, 2001, hearing on Palm's first motion to reconsider the dismissal, the court stated that count I "asks for an advisory opinion" and then dismissed the count with prejudice. This is the only reflection in the record of the court's reason for dismissing count I. Except for this cursory reference, the entirety of the hearing on the motion to reconsider, indeed the majority of the parties' filings regarding dismissal of the first amended complaint, were directed to count IV of the first amended complaint. However, the court's single-sentence explanation reflects the argument defendants made in their motion to dismiss count I, which was that count I failed to state a claim on which relief could be granted or present an actual controversy for the court's review and, instead, merely requested an order restating the law set forth in section 18(a)(9) of the Act.

- 12 -

was properly dismissed. See *Schwanke, Schwanke & Associates*, 241 Ill. App. 3d at 748. A declaratory judgment action is not intended to enable a party to secure an advisory opinion. *Byer Clinic & Chiropractic, Ltd.*, 2013 IL App (1st) 113038, ¶ 17.

¶ 47 As the trial court found, Palm was seeking an advisory opinion and his claim for a declaratory judgment should, therefore, be dismissed. In reaching this determination, the court did not examine the merits of the claim. With no factual support presented in the complaint, there were no merits to be considered. Accordingly, given that the court did not decide count I on its merits, it should not have dismissed count I with prejudice. Further, because the court did not dismiss count I of the first amended complaint on the merits, the dismissal of the count did not bar the court from considering the same issues raised in subsequent complaints and a motion for summary judgment directed thereto. The court did not err in considering the "doing business in closed session" claims asserted in the motion for summary judgment.

¶ 48 B. Conducting Business in Closed Sessions

¶ 49 Defendants next argue that the trial court improperly granted summary judgment to Palm on the question of whether the association conducts association business in gatherings that are not "meetings" under the Condominium Property Act (765 ILCS 605/1 *et seq.* (West 2004)). The court held that actions taken by the board outside of open board meetings violated the declaration and Condominium Property Act, specifically pointing to the board's discussion of association matters at "workshop sessions" closed to unit owners.

¶ 50 The court should grant a motion for summary judgment only where " 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Axen v. Ockerlund Construction Co.*, 281 Ill. App. 3d 224, 229 (1996) (quoting *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986)). In deciding a motion for summary judgment, the court must not try a question of fact but rather determine whether one exists or if reasonable persons could draw different inferences from the undisputed facts. *Golden Rule Insurance Co. v. Schwartz*, 203 Ill. 2d 456, 462 (2003); *Wood v. National Liability & Fire Insurance Co.*, 324 Ill. App. 3d 583, 585 (2001). In deciding a motion for summary judgment, the court must construe the pleadings, depositions, admissions and affidavits strictly against the moving party and liberally in favor of the respondent. *Gauthier v. Westfall*, 266 Ill. App. 3d 213, 219 (1994). We review the trial court's entry of summary judgment in favor of defendant *de novo*. *Golden Rule Insurance Co.*, 203 Ill. 2d at 462.

¶ 51 The Condominium Property Act regulates the creation and operation of Illinois condominium associations. *Board of Managers of Weathersfield Condominium Ass'n v. Schaumburg Ltd. Partnership*, 307 Ill. App. 3d 614, 619 (1999). Section 2(w) of the Condominium Property Act defines "meeting of board of managers" as "any gathering of a quorum of the members of the Board of Managers *** held for the purpose of conducting board business." 765 ILCS 605/2(w) (West 2004). Section 18(a)(9) of the Act requires that an association's bylaws provide, in relevant part:

"[*M*]*eetings of the board of managers shall be open to any unit owner*, except for the portion of any meeting held (i) to discuss litigation when an action against or on behalf of the particular association has been filed and is pending in a court or administrative tribunal, or when the board of managers finds that such an action is probable or imminent, (ii) to consider information regarding appointment, employment or dismissal of an employee, or (iii) to discuss violations of rules and regulations of the association or a unit owner's unpaid share of common expenses; *that any vote on these matters shall be taken at a meeting or portion thereof open to any unit owner* ***[.]*" (Emphases added.) 765 ILCS 605/18(a)(9) (West 2004).[6]

In compliance with section 18(a)(9), section 506(e) of the declaration provides that "all meetings of the Board shall be open to attendance by any Unit Owner."

¶ 52     Defendants argue that the Condominium Property Act (Act) does not prohibit an association's board from holding working sessions at which issues relating to the association are discussed but not voted upon. They assert that, under the Act, a "board meeting" occurs only when a quorum of the board meets to vote on, rather than discuss, board business and, therefore, because the evidence showed that no votes were taken at any working or closed board sessions, the sessions were not improper board meetings under the Act and the declaration and the court erred in granting summary judgment on this basis.

¶ 53     In examining statutory construction, we must give effect to the language and intent of the legislature. *Board of Managers of Weathersfield Condominium Ass'n*, 307 Ill. App. 3d at 621. To accomplish this goal, the entire statute must be considered, and words used should be given their plain and ordinary meanings. *Id*. The language of a statute must be viewed as a whole, such that each section of the statute is examined in relation to every other section. *Id*. In considering legislative intent, courts must " 'presume that the legislature did not intend absurdity, inconvenience or injustice, and select an interpretation of the statute which leads to logical results and avoids that which would be absurd.' " *Id*. (quoting *People v. Liberman*, 228 Ill. App. 3d 639, 647 (1992)).

¶ 54     After applying the rules of statutory construction and examining the plain language of the statute, we hold that "conducting board business," as used in the section 2(w) definition of

---

[6]The requirement for open meetings mirrors that in section 108.21 of the Not for Profit Act, which provides in relevant part:

"Meetings of the board of directors of a *** not-for-profit [homeowners association] shall be open to any member, except for the portion of any meeting held (i) to discuss litigation when an action against or on behalf of the corporation has been filed and is pending in a court or administrative tribunal, or when the board of directors finds that such an action is probable or imminent, (ii) to consider information regarding appointment, employment or dismissal of an employee, or (iii) to discuss violations of rules and regulations of the corporation ***. *** For purposes of this Section, 'meeting of the board of directors' means any gathering of a quorum of the members of the board of directors *** held for the purpose of discussing business of the [homeowners association or] cooperative." 805 ILCS 105/108.21 (West 2004).

board "meeting" in the Condominium Property Act, encompasses the activities by the board in the workshop and executive sessions.

¶ 55    As noted above, the Act specifically requires that "meetings of the board of managers shall be open to any unit owner." 765 ILCS 605/18(a)(9) (West 2004). There are only three exceptions to the open meeting requirement: the board may meet in closed meetings to (1) "discuss" pending or potential litigation involving the association, (2) "consider" information regarding the hiring and firing of employees and (3) "discuss" rules violations or unpaid assessments. 765 ILCS 605/18(a)(9) (West 2004). Although the board may "discuss" and "consider" the three excepted subjects in closed meetings, it is still required to "vote on these matters *** at a meeting or portion thereof open to any unit owner." 765 ILCS 605/18(a)(9) (West 2004). The plain language of this section leads to the conclusion that, not only must all board voting occur at meetings open to unit owners, so must all board discussion or consideration of association matters, except for discussion or consideration of the three specified exceptions.

¶ 56    Defendants assert that, except for the three exceptions stated in section 18(a)(9), all board discussion and consideration of association matters without vote can occur in closed meetings. This is an illogical interpretation of section 18(a)(9). If it was the legislature's intent that board discussion and consideration of *all* association issues can occur in closed meeting, there would be no need for the legislature to specifically provide that discussion and/or consideration of issues regarding litigation, employee hiring and rules violations can occur in closed meetings. Discussion and consideration of those three issues would already be encompassed by the general rule asserted by defendants that discussion and consideration without vote of all association matters can occur in closed meetings. From the fact that the legislature deemed it necessary to create these three exceptions to the open meeting requirement, we can assume that such a general rule does not exist.

¶ 57    Prior to January 1, 1994, section 2(x) of the Act defined "Meeting of Board of Managers" as "any gathering of a majority of a quorum of the members of the Board of Managers *** held for the purpose of *discussing* board business." (Emphasis added.) 765 ILCS 605/2(x) (West 1992). In 1993, the legislature amended section 2(x), now section 2(w), and changed the definition of a board "meeting" to "any gathering of a quorum of the members of the Board of Managers *** held for the purpose of *conducting* board business." (Emphasis added.) 765 ILCS 605/2(w) (West 2004); Pub. Act 88-417 (eff. Jan. 1, 1994).

¶ 58    The verb "discuss" is defined variously as "to investigate by reasoning or argument" and "to talk about" and "to present in detail for examination or consideration." Merriam-Webster's Collegiate Dictionary 358 (11th ed. 2006). The verb "conduct" is defined as "to direct or take part in the operation or management of *** a business." Merriam-Webster's Collegiate Dictionary 259 (11th ed. 2006). "Conducting board business," therefore, means directing or taking part in the operation or management of the association. Nothing in the wording of the statute leads us to conclude that the phrase "conducting board business" should be interpreted to mean only "voting on board business," as defendants assert.

¶ 59    As the above definitions show, "to conduct" does not mean "to vote." To conduct business means to direct or take part in the operation or management of a business, which might

- 15 -

encompass voting on business matters but is not limited to such voting. One cannot direct or take part in the operation or management of a business unless one also discusses and considers that business before making decisions/voting on that business. Indeed, board members cannot conduct ("direct or take part in the operation or management") board business unless they also discuss ("investigate by reason or argument," "talk about" and "present in detail for examination and consideration") the issues involved in that business. Accordingly, when the legislature amended the statute in 1993, it expanded the definition of board "meeting" to encompass more than just "discussion." Nothing suggests that it intended to limit the definition of "meeting" to mean only those gatherings where a board votes on business matters.

¶ 60 It is uncontested that the board discussed association and board business in workshop and executive sessions not open to unit owners. Given our determination that "conducting board business" encompasses "discussing" board business, those working and executive sessions were board "meetings" under the Act and should have been held in meetings open to all unit owners as required by section 18(a)(9) of the Condominium Property Act. The court did not err in finding that defendants violated the declaration and the Act by holding board meetings in closed working or executive sessions. Accordingly, we affirm the trial court's grant of partial summary judgment to Palm on this basis, its declaratory finding stating such and its injunction barring the board from continuing this practice.

¶ 61 C. Voting by Email and Canvassing of Board Members

¶ 62 Defendants assert that the court should not have granted summary judgment to Palm and entered injunctive relief on the question of whether actions regarding employee pay increases were done by written canvassing of board members as Palm failed to submit evidence on this issue. They argue similarly with regard to the question of whether the board waives its right of first refusal through emails, asserting Grossman and board member Bernard Viola both testified that no votes were taken by email and Palm presented no contrary evidence.

¶ 63 In the court's order granting summary judgment to Palm, it found defendants violated the declaration by admittedly " 'doing business' " at closed sessions. It then held that Palm submitted "undisputed evidence" showing "that other actions were taken without an open meeting of the Board through the practice of sending emails to Board members which listed units up for sale, and soliciting whether Board members had any 'objections.' Actions regarding pay increases for employees were also done by using a written canvassing of Board members."

¶ 64 In exhibit 85 to the motion for summary judgment, Palm submitted a copy of a memorandum from the building's property manager to the board of directors suggesting that the board approve a salary increase for "Dani," the building's garage manager. At the bottom of the memorandum, there are two check boxes: "Yes, I agree in retaining Dani" and "No, I do not agree." The exhibit supports the court's finding that the evidence shows that board actions regarding employee pay increases were done by written canvassing of board members.

¶ 65 The evidence regarding the emails is less clear. There is no exhibit attached to the motion for summary judgment to show that, contrary to Grossman's and Viola's testimony, the board

votes on its right of first refusal through emails. Therefore, a dispute exists regarding whether the board did, in fact, waive its right of first refusal by email. However, this dispute is not material.

¶ 66    First, exhibit 85 shows that board voting by written canvassing occurred. Second, defendants admitted that working sessions behind closed doors were held.

¶ 67    We previously determined that, unless the subject before the board concerns one of the three exceptions stated in section 18(a)(9) of the Condominium Property Act (matters relating to litigation, employee hiring and rules violations), all board discussion, investigating by reason or argument, talking about, presenting in detail for examination and consideration of association matters as well as voting thereon must be conducted in meetings open to the unit owners. Therefore, any dispute regarding whether Palm showed that the board's right of first refusal was the subject of the emails is not material to Palm's claim that the board violates section 18(a)(9) every time it votes on, discusses or considers any association matters other than in an open meeting.

¶ 68    The court did not err in finding that defendants violated the declaration and Act. We affirm the court's grant of summary judgment to Palm on this issue and the court's injunctions prohibiting the board from exercising waivers of the right of the board's first refusal or approving employee compensation except at meetings open to all unit owners.

¶ 69                              D. Board Vote on Contracts
                                            and
                      E. Enforcement of Management Agreement

¶ 70    Defendants' fourth and fifth arguments are related so we will address them together. Defendants argue that the court erred in entering an injunction requiring that the board must approve every contract entered into by the association and, in a related argument, that the court improperly enjoined enforcement of 6th amended paragraph 19 of the association's agreement with its management company.

¶ 71    The sixth amendment to the management agreement changed paragraph 19 of the agreement to include the following:

> "[3](b) Contracts for service or materials having a value of $10,000 to $100,000 shall be selected pursuant to competitive bidding procedures and written specifications with at least three (3) bids if Agent is directed to use such procedures *following consultation with at least three (3) officers* of the Association. The bidding procedures set forth in the first sentence of this Subparagraph (b) shall be used if the Agent is advised that *any one of the three officers* consulted has determined that such procedures should be used.
>
>                                     * * *
>
> 4. Subject to the bidding procedures set forth in Paragraph 19, if a proposed expenditure of Association funds for any individual expenditure of a non-recurring nature or a contractual nature has been approved by the Board in the annual budget , or any supplement there to, then *** (b) if the expenditure or contract is greater than

$10,000 but less than $50,000, the Agent prior to incurring such expense or entering into such contract, shall consult with *at least three officers of the Board and unless otherwise directed by any one of such officers*, the Agent may incur such expense or enter into such contract on behalf of the Association without further Board approval." (Emphases added.)

¶ 72 The court held that "the 6th Amendment approval provision allowing three officers to be consulted and one to approve" violated both the declaration and the Not for Profit Act. It declared that "[a]ll provisions of the Management Agreement that allow management to obtain approval with respect to bidding and contracting from one or more officers of the Board rather than the whole Board violate the Declaration and the Illinois Not for Profit Act and are null and void."

¶ 73 The court enjoined defendants "from entering or approving any contract on behalf of the Association without approval by a vote of the Board, at a meeting open to any unit owner, for which prior notice was provided to all unit owners and at which a quorum of the Board is present." It also enjoined defendants "from authorizing or permitting management or any entity or person to enter any contract on behalf of the Association, or select contracts for services or materials having a value of more than $10,000 on behalf of the Association, without approval by a vote of the Board, at a meeting open to any unit owner, for which prior notice was provided to all unit owners, and at which a quorum is present."

¶ 74 Defendants do not contest that they have delegated the approval of certain contracts to the management company or that contracts are routinely approved by only a segment of the board. They assert, however, that the board has the authority under the declaration to delegate to a property management company and its employees the board's power to enter into contracts and make purchases for the maintenance, repair and administration of the property.

¶ 75 The declaration is the contract between the association and the unit owners governing the operation of the condominium property and association and sets forth the board's duties related to management of the property and association. In assessing defendants' argument, we necessarily must interpret this contract. The primary goal of contract interpretation is to give effect to the intent of the parties, as shown by the language in the contract. *Lease Management Equipment Corp. v. DFO Partnership*, 392 Ill. App. 3d 678, 685 (2009). In determining the intent of the parties, a court must consider the document as a whole and not focus on isolated portions of the document. *Premier Title Co. v. Donahue*, 328 Ill. App. 3d 161, 164 (2002). If the language of a contract is clear and unambiguous, the intent of the parties must be determined solely from the language of the contract itself. *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007). That language should be given its plain and ordinary meaning and the contract enforced as written. *Virginia Surety Co.*, 224 Ill. 2d at 556. The interpretation of a contract is a question of law and may, therefore, be decided on a motion for summary judgment. *Premier Title Co.*, 328 Ill. App. 3d at 164.

¶ 76 Section 5.06(a) of the declaration provides that "[e]xcept as otherwise provided in this Declaration, the Property shall be managed by the Board and the Board shall act by majority vote of those present at its meetings when a quorum exists" and "[a] majority of the total number of members on the Board shall constitute a quorum." Section 4.06(a) provides that the

board is responsible for maintenance and repair of the common elements of the condominium property. Under section 5.01 of the declaration, the board "may engage the services of an agent to manage the portions of the Property for which the Board is responsible pursuant to this Declaration, to the extent deemed advisable by the Board." Section 5.07(b) of the declaration provides:

> "The Board shall have the power and duty to provide for the designation, hiring and removal of employees and other personnel ***, to engage or contract for the services of others, and to make purchases for the maintenance, repair, replacement, administration, management and operation of the Property and *to delegate any such powers to the manager or managing agent (and any such employees or other personnel as may be employees of the managing agent).*" (Emphasis added.)

¶ 77    Under the clear and unambiguous language of the declaration, the board has the authority to engage a management company and to delegate the board's responsibility to manage, maintain and repair the common elements of the property to the management company. It also has the authority to delegate its power and duty to manage personnel, contract for services and make purchases for the management, maintenance and operation of the property to the management company. Accordingly, under the declaration, the board had the authority to allow the management company to enter into contracts on behalf of the association. However, as the trial court found, the board does not have the authority to authorize that contractual action taken by the management company can be approved by less than the entire board.

¶ 78    Section 108.40 of the Not for Profit Act provides:

> "The board of directors may create and appoint persons to a commission, advisory body or other such body which may or may not have directors as members, which body may not act on behalf of the corporation or bind it to any action but may make recommendations to the board of directors or to the officers." 805 ILCS 105/108.40(d) (West 2004).

As the trial court pointed out in its decision on the motion for summary judgment, the declaration does not provide for such a commission. In the absence of a provision in the declaration providing for a commission to do the board's business, any business of the board must necessarily be conducted by the entire board.

¶ 79    Under the declaration, the board has the authority to delegate its contract power to the management company. However, defendants have not shown us where in the declaration board approval of contracts is required if such delegation is made. Under the declaration, there is no authority to require board approval of a contract proposed by the management company but yet allow such approval to be by less than the entire board. The board has to make a decision. It can either (1) delegate the power to enter contracts *without board approval* or (2) delegate the power to enter contracts *with full board approval*. There is no authority for the board to delegate the power to enter contracts with approval by *less than* the entire board. Accordingly, the board had no authority to delegate its contract power to the management company but require the management company to obtain contract and bidding approval from three board members. The court did not err in finding that sixth amended paragraph 19 of the management agreement, which allows the management company to consult three officers and

- 19 -

obtain approval of one officer for contracts, violates the declaration and the Not for Profit Act. The court's finding that the 6th amendment approval provision violates the declaration and Not for Profit Act is affirmed.

¶ 80    The court issued the following injunctive orders:

"[II]D. Defendants are enjoined from entering or approving any contract on behalf of the Association without approval by a vote of the Board, at a meeting open to any unit owner, for which prior notice was provided to all unit owners and at which a quorum of the Board is present.

E. Defendants are enjoined from authorizing or permitting management or any entity or person to enter any contract on behalf of the Association, or select contracts for services or materials having a value of more than $10,000 on behalf of the Association, without approval by a vote of the Board, at a meeting open to any unit owner, for which prior notice was provided to all unit owners, and at which a quorum is present."

¶ 81    Defendants argue that the court erred in entering "an injunction requiring that the board must approve every contract entered into by the association," referencing injunction II(D) cited above. We agree with defendants that the board is not required to approve every contract entered into by the association but do not agree that the court erred in entering injunction II(D). As we held above, under the declaration, the board can choose to delegate to a managing agent its power to contract without requiring board approval of the contracts. Under this delegation, the managing agent rather than the board would enter or approve contracts on behalf of the association and injunction II(D), therefore, would not apply. The board can also choose to delegate its power to contract with *full* board approval or it can choose not to delegate its power to contract at all. In such instances, the board itself will enter or approve contracts on behalf of the Association. Injunction II(D) would apply to these situations and correctly provides that the board must enter or approve such contracts by a vote of the *full* board at an open meeting.

¶ 82    We find that defendants' argument simply misconstrues the court's injunctive order II(D). This order merely provides that, when the board acts to enter or approve a contract on behalf of the association, it must do so by vote of the *full* board at an open meeting.

¶ 83    With regard to injunction II(E) above, this injunction merely provides that the delegation of contract authority is an act that must be done by the *full* board in an open meeting. There is no dispute regarding this injunction.

¶ 84    The court's injunctive orders II(D) and II(E) are affirmed.

¶ 85                              F. Board Vote on Litigation Matters

¶ 86    Defendant argues that the trial court erred in granting summary judgment to Palm on the question of whether defendants violated the declaration and the Not for Profit Act by failing to vote on the defense of the instant litigation in an open meetings. The court entered a declaratory order to that effect and enjoined defendants "from authorizing or allowing litigation by the Association (including prosecution or defense of any action) without approval by a vote of the Board, at a meeting open to any unit owners, for which prior notice is provided

to all unit owners, and at which a quorum of the Board is present." It ordered that defendants hold a meeting open to all unit owners "within the next 30 days" at which the board must vote on whether to authorize the continued defense of the instant lawsuit.

¶ 87 As held above in section I(B), the board is required to discuss and vote on association business in meetings open to all unit owners. The question of whether to assert or defend a lawsuit and, necessarily, whether to expend association funds and resources on such litigation is clearly a question involving the business of the association. Although section 18(a)(9) of the Condominium Property Act provides an exception allowing the board to discuss litigation matters in closed sessions, it specifically provides that the board must vote on any litigation matter at meeting open to all unit owners.

¶ 88 It is uncontested that the board never voted on litigation matters, at open meetings or otherwise. Grossman testified that the board had never voted on litigation matters because the association had never affirmatively filed suit and, when it "filed on nonpayment, that is from management to the attorney." The board had delegated responsibility for handling unit owner delinquencies to the management company, which pursued collection activities in concert with the association's attorney. The board did not vote on whether to continue to defend against Palm's lawsuit.

¶ 89 Accordingly, given that litigation is association business that must be voted on in open meetings, the court did not err in granting summary judgment to Palm on his assertion that the association could not pursue litigation without any vote by the board and that the board's failure to conduct such a vote to defend the instant litigation violated the declaration and Condominium Property Act. We affirm the court's grant of summary judgment on this question, its declaratory order to the same effect and its injunctive order enjoining defendants from authorizing or allowing litigation by the association without approval by the board in a meeting open to all unit owners and ordering defendants to hold an open meeting at which the board must vote on whether to authorize continued defense of the instant lawsuit.

¶ 90 II. The September 10, 2010, Order, October 25, 2010, Order
and April 5, 2011, Order

¶ 91 Defendants raise six issues challenging the court's September 10, 2010, order finding in favor of Palm on assorted claims in his third amended complaint and its October 25, 2010, and April 5, 2011, orders entering declaratory and injunctive relief based on its September 10, 2010, findings.

¶ 92 A. Cause of Action for Negligent Breach of Fiduciary Duty

¶ 93 Defendants first argue that the trial court erred in ruling that defendants' breaches of fiduciary duty were done with "gross negligence" because, as a matter of law, no cause of action exists for negligently breaching a fiduciary duty. Defendants assert that the court could not have found defendants were negligent, let alone grossly negligent, in breaching their fiduciary duties because a breach of fiduciary duty under Illinois law is not a tort and cannot be breached either negligently or with gross negligence. They argue that, therefore, the board and

- 21 -

Grossman cannot be liable to Palm for negligently or grossly negligently breaching any claimed fiduciary duty.

¶ 94    Section 18.4 of the Condominium Property Act sets out the powers and duties of a condominium board of managers and provides that, "[i]n the performance of their duties, the officers and members of the board *** shall exercise the care required of a fiduciary of the unit owners." 765 ILCS 605/18.4 (West 2004). "This fiduciary duty is owed by boards as well as their individual members." *La Salle National Trust, N.A. v. Board of Directors of the 1100 Lake Shore Drive Condominium*, 287 Ill. App. 3d 449, 454 (1997). "Because the association officers and board members owe a fiduciary or quasi-fiduciary duty to the members of the association, they must act in a manner reasonably related to the exercise of that duty, and the failure to do so will result in liability not only for the association but also for the individuals themselves." *Wolinsky v. Kadison*, 114 Ill. App. 3d 527, 533-34 (1983); see also *Goldberg v. Astor Plaza Condominium Ass'n*, 2012 IL App (1st) 110620, ¶ 62.

¶ 95    Defendants are correct that there is no cause of action in Illinois for negligent or grossly negligent breach of fiduciary duty. *Robinson v. LaCasa Grande Condominium Ass'n*, 204 Ill. App. 3d 853, 859 (1990). Therefore, although defendants are fiduciaries of the unit owners, they cannot be liable in tort for the *negligent* performance of their fiduciary duties to the unit owners. *Robinson*, 204 Ill. App. 3d at 859. Defendants assert, therefore, that the court erred in holding that defendants' breaches of fiduciary duty were done with "gross negligence."

¶ 96    Defendants misconstrue the court's holding. The court did state that it found "the defendants' breach of fiduciary duties constituted gross negligence." However, the court did not find that defendants were guilty of committing a civil wrong known as grossly negligent breach of fiduciary duty. It simply found defendants guilty of breach of fiduciary duty. The court's further finding that defendants' acts were grossly negligent was only in response to the matters raised by defendants' second affirmative defense.

¶ 97    In its September 10, 2010, 17-page decision, the court held that defendants breached their fiduciary duty by "failing to strictly comply with the clear requirements of" the declaration and/or the Condominium Property Act by failing to itemize reserves in the budget, failing to credit unit owners with surpluses, commingling operating and reserve expenses, allowing funds in bank accounts in excess of the FDIC-insured limit, failing to provide written notices of board meetings as required by the declaration and failing to present possible conflicts of interest to the unit owners for approval. The court then addressed the three affirmative defenses counterclaim defendants raised in their answer to the third amended complaint. The court found no evidence to support the first affirmative defense and stated it had previously decided the third affirmative defense. Relevant here is the court's decision on defendants' second affirmative defense.

¶ 98    The entirety of defendants' second affirmative defense is as follows:

       "Section 5.10 of the Association's Declaration provides, relevant parts [*sic*], as follows:

              Neither the members of the Board nor the officers of the Association shall be liable to the unit owners for any mistake of judgment or for any other acts or

- 22 -

omissions of any nature whatsoever as such board members and officers [*sic*] except for any extra omissions found by a court to constitute gross negligence or fraud.

The Actions of the Association, Board, and Ms. Grossman do not constitute gross negligence or fraud. Therefore, the Defendants are not liable to the Plaintiff.”

¶ 99 Addressing this affirmative defense, the court held that the acts that it had found to be violations of the declaration or Condominium Property Act did not “constitute fraud.” It then stated:

“However, considering the clear requirements of the Declaration which were not complied with regarding reserves, surpluses and notices, this Court finds that defendants' conduct was *grossly negligent* in that they intentionally failed to act in the fact of a known duty, demonstrating a conscious disregard for their duties. *Sherman v. Ryan*, 391 Ill. App. 3d 712, 730 (2009).” (Emphasis added.)

¶ 100 The court next denied defendants' counterclaim for fees, finding Palm did not file count I of his complaint vexatiously or in bad faith. Finally, the court synopsized its three decisions in its “conclusion,” the final paragraph of its decision, as follows:

“The court finds that the defendants breached their fiduciary duties by failing to comply with the Declaration and Condominium Property Act. The Court, also, finds that the defendants' breach of fiduciary duties constituted gross negligence because the defendants duties were clearly established in the Declaration and Condominium Property Act. Finally, the Court denied defendants' counterclaims because Palm's claim was not vexatious, arbitrary, or capricious.”

¶ 101 The court's decision shows that it addressed the issue of gross negligence solely in the context of the second affirmative defense. The court first found, on Palm's complaint asserting breach of fiduciary duty among other claims, that assorted acts by defendants were in breach of their fiduciary duties. It then considered, in the context of the affirmative defense, whether the board was grossly negligent in committing those acts such that the declaration might exempt them from liability as defendants argued. It found that defendants' acts were grossly negligent and subsequently synopsized this finding in its conclusion. At no point did the court consider whether defendants were liable for a tort known as grossly negligent breach of fiduciary duty.

¶ 102 Defendants are correct that Palm never alleged that defendants' breaches of their fiduciary duties were negligent or grossly negligent. Palm's third amended complaint did not request a declaratory finding that defendants were grossly negligent in their breach of their fiduciary duties. Indeed, Palm could not have argued such given that a cause of action for negligent breach of fiduciary duty does not exist in Illinois. Similarly, defendants' counterclaim did not request a declaratory finding that they were not grossly negligent in such breaches. The court, therefore, did not make such a finding. The court held that defendants' conduct was grossly negligent only in the context of defendants' affirmative assertion that the board and Grossman were not liable because, pursuant to an exculpatory clause in the declaration, board members and association officers are not liable for any mistakes of judgment or other acts or omissions except “for any extra omissions found by a court to constitute gross negligence or fraud” and that defendants' actions constituted neither. The court did not connect the concept of “gross

- 23 -

negligence" to Palm's claims for breach of fiduciary duty because that issue was not before it. Accordingly, the court did not err in finding defendants were grossly negligent in their assorted violations of the declaration and Condominium Property Act.

¶ 103                     B. Gross Negligence in Breach of Fiduciary Duty

¶ 104     In a related argument, defendants argue that the trial court erred in ruling that defendants' breaches of fiduciary duty were done in a grossly negligent manner because that issue was never before the court. They assert that the issue of whether defendants breached any fiduciary duty in a grossly negligent manner was never raised at trial because it was never part of the litigation given that neither party asserted a prayer for relief that would support the court's "unilateral" ruling that defendants breaches of fiduciary duty were grossly negligent.

¶ 105     As explained above in section II(A), defendants misstate the court's holding. The court limited its decision to addressing defendants' affirmative defense that the exculpatory clause in the declaration applied and thus held only that defendants' violative acts were conducted in a grossly negligent manner. Arguably, given the gross negligence finding, the declaration would not exempt defendants from liability if Palm sought a liability finding. But Palm did not do so.

¶ 106     As also stated previously, the question of defendants' gross negligence was clearly before the court because defendants had raised it in their second affirmative defense. The court's pretrial order delineating the issues on which evidence would be presented at trial shows as much. As the court explained in its September 10, 2010, decision, "the Pretrial order provided that the Court would hear evidence on defendants' affirmative defenses of *** 2) an exculpatory clause in Section 5.10 of the Declaration of Condominium."

¶ 107     Defendants assert that the court should not have reached the affirmative defense because they had raised it against count I of the third amended complaint, which Palm apparently withdrew during closing argument, and count V, which the court found barred by the statute of limitations. We find no support for this assertion. The affirmative defense is quoted in its entirety above in section II(A). Nothing in the language of the affirmative defense limits its application only to counts I and V.

¶ 108     Further, defendants have failed to include a transcript of the four-day hearing on the third amended complaint, counterclaim and affirmative defenses in the record. As the appellants, it is defendants' burden to present a sufficiently complete record to support their arguments and any inadequacies in the record will be held against them. *Redelmann v. K.A. Steel Chemicals, Inc.*, 377 Ill. App. 3d 971, 977 (2007). Without a report of the proceedings, we cannot know with certainty the issues before the court during the four-day hearing. Necessarily, therefore, we must presume that the court had a sufficient basis for addressing whether defendants' conduct was grossly negligent. The court did not err in addressing the question of whether defendants were grossly negligent in their violations of the declaration and the Condominium Property Act.

¶ 109                              C. Advice of Counsel

¶ 110 Defendants argue that the trial court erred in ruling that defendants breached their fiduciary duty by transferring surplus association income to the association's reserve account instead of crediting it against unit owners future assessments as arguably required by the declaration. They do not challenge the assertion that they transferred the surplus to reserve account in violation of the declaration. Instead, they argue, as they did below, that they did not breach their duty because they had acted on advice of counsel in interpreting the declaration to permit this practice.

¶ 111 The fiduciary duty owed by board members to unit owners requires that board members act in a manner reasonably related to the exercise of that duty, and their failure to do so results in liability for the board and its individual members. *Carney v. Donley*, 261 Ill. App. 3d 1002, 1011 (1994); *Wolinsky*, 114 Ill. App. 3d at 533-34. However, when a board properly exercises its business judgment in interpreting its own declaration, we will not find the board's interpretation a breach of fiduciary duty. *Carney*, 261 Ill. App. 3d at 1011. The business judgment rule will defeat breach of fiduciary duty claims where the board's actions were not permitted under the condominium declaration. *Wolinsky v. Kadison*, 2013 IL App (1st) 111186, ¶ 65. "Under the business judgment rule, '[a]bsent evidence of bad faith, fraud, illegality, or gross overreaching, courts are not at liberty to interfere with the exercise of business judgment by corporate directors.' " *Goldberg*, 2012 IL App (1st) 110620, ¶ 63 (quoting *Fields v. Sax*, 123 Ill. App. 3d 460, 467 (1984)). The purpose of the rule is to protect directors who have been careful and diligent in performing their duties from being subjected to liability from honest mistakes of judgment. *Id*. However, if board members have failed to exercise due care, then they may not use the business judgment rule as a shield for their conduct. *Id*.

¶ 112 "One component of due care is that directors must inform themselves of material facts necessary for them to properly exercise their business judgment." *Goldberg*, 2012 IL App (1st) 110620, ¶ 64. To that end, if a board seeks legal advice before reaching its decision and relied on that advice in reaching its decision, it will be found to have properly exercised its business judgment. *Id*. ¶ 65 (board members did not breach their fiduciary duty to unit owners in interpreting declaration where the record showed the board sought legal advice before reaching its decision and relied on that advice); *Carney*, 261 Ill. App. 3d at 1011 (board's interpretation of declaration did not breach its fiduciary duty to the plaintiff because the board had sought legal advice before reaching its decision; court held "[u]nder these circumstances, we cannot say that the Board acted unreasonably or failed to exercise properly its business judgment"); see also *Davis v. Dyson*, 387 Ill. App. 3d 676, 695 (2008) (business judgment rule did not apply to protect the board of directors where the board violated the Condominium Property Act by failing to purchase the proper insurance to protect the association's funds and failed to obtain the advice of counsel to learn about their duties as to insurance coverage, association finances or personnel supervision).

¶ 113 In its September 10, 2010, order, the court stated as follows:

"Defendants argue that the conduct challenged as violations of the Declaration or the Condominium Property Act[ ] were done based on advice of counsel, particularly Michael Kurtzon, other attorneys, and Barbara Baran ***. Palm does not dispute that

their attorneys provided advice to the defendants. Defendants, however[,] failed to present any evidence that the attorneys advised them to use the procedures regarding reserves, surpluses and notices, which the Court has found failed to strictly comply with the Declaration and the law."

Defendants argue that they did present uncontroverted evidence that attorney Kurtzon, the association's attorney, gave the board an opinion that transferring the surplus income to the reserve account was proper under the terms of the declaration.

¶ 114    "In deciding a case based on the evidence, our standard of review is manifest weight of the evidence, which means a reviewing court should overturn a trial court's factual findings only if they are against the manifest eight of the evidence." *Goldberg*, 2012 IL App (1st) 110620, ¶ 60. A court's findings are against the manifest weight of the evidence only if an opposite conclusion is apparent or the findings appear to be unreasonable, arbitrary, or not based on the evidence. *Id*. We confer this deferential standard of review "because the trial court is in a superior position to determine and weigh the credibility of the witnesses, observe witnesses' demeanor, and resolve conflicts in their testimony." *Id*.

¶ 115    We do not find the court's decision against the manifest weight of the evidence. As we noted previously in section II(B) above, defendants did not include a report of proceedings of the four-day hearing on the third amended complaint in the record. Therefore, we cannot know what evidence the court heard, let alone whether that evidence was sufficient to show that defendants acted on advice of counsel in transferring excess funds to the reserve accounts rather than reimbursing the unit owners. As the appellants, it is defendants' burden to present a sufficiently complete record to support their arguments and any inadequacies in the record will be held against them. *Redelmann*, 377 Ill. App. 3d at 977. Accordingly, we presume that the court properly found defendants failed to "present any evidence that the attorneys advised them to use the procedures regarding reserves, surpluses and notices."

¶ 116    Defendants assert that board president Grossman's testimony, as shown in a small portion of a report of proceedings attached as an exhibit to the parties' pretrial motion, demonstrated that there was evidence to show that the board acted on advice of counsel regarding where to transfer the surplus income. First, there is nothing in the transcript that shows when this testimony was heard. Second, the exhibit consists of random sections of Grossman's testimony and jumps from page to page. It is impossible to read the testimony in context. Lastly, if we were to consider the exhibit sufficient for our review, we would find Grossman's testimony inadequate to demonstrate that the board acted on advice of counsel in transferring the surplus income to the reserve account.

¶ 117    Grossman's testimony was as follows:

"Q. Have you ever gotten a legal opinion that that money [surplus income] was to be retained for other purposes than credited against unit owners' future assessments?

A. [Grossman:] No. We've never had a legal opinion that told us that.

Q. Well, why do you conclude that that's all right?

A. Because the legal opinion said we could transfer the reserve, transfer the excess funds into the reserve. That's what our legal opinion has been.

Q. And that's [a] legal opinion from whom?

A. Kurtzon, Michael Kurtzon.

Q. Is that in writing?

A. I have no idea.

Q. And when did you first learn that was a legal opinion of Mr. Kurtzon?

A. I don't know. Probably ten years ago. I have no idea. I would be guessing. It had been the practice since before I came on the board. We have continued the practice."

All we can glean from this testimony is that it was the board's practice to transfer excess funds to the reserve account and that Grossman thought this practice was based on advice from attorney Kurtzon issued some 10 years prior. Standing alone, this evidence is entirely inadequate to show that the board received the requisite legal advice and relied on it. The court did not err in finding that the business judgment rule did not protect defendants from their breach of fiduciary duty in transferring surplus association income to the association's reserve account instead of crediting it against unit owners' future assessments.

## D. Business Judgment

In a related argument, defendants argue that the court erred in finding that defendants breached a fiduciary duty by transferring surplus income to the association's reserve account because the board exercised its business judgment in interpreting its own declaration. Again, we do not have the report of proceedings for the four-day hearing on the third amended complaint. Therefore, we do not know what evidence the court heard with regard to whether the board exercised its business judgment in this regard. We cannot know whether the court heard evidence that the board members acted carefully and diligently, informing themselves of the material facts necessary for them to properly exercise their business judgment. We cannot know whether it heard evidence that the board's actions were in bad faith, fraudulent, illegal or grossly overreaching although, given the court's subsequent finding that the board's violations were "grossly negligent," it arguably heard sufficient evidence of the later. Any inadequacies in the record will be held against defendants, the appellants here. Accordingly, as held above, we must presume the court had a sufficient basis to find that defendants breached their fiduciary duty by transferring surplus association income to the association's reserve account instead of crediting it against unit owners' future assessments and that the business judgment rule did not protect this conduct.

## E. Commingling of Operating Funds and Reserve Expenses

Defendants argue that the trial court erred when it ruled that the board breached its fiduciary duty by using the operating fund to pay reserve expenses and reimbursing the operating fund from the reserve fund. Defendants do not claim that they did not commingle the operating fund and reserve expenses in this manner. Instead, they argue that the court erred in holding that that they did not present evidence that they relied on the advice of their attorney in doing so. They assert the court's decision is in direct contravention to the evidence presented at

trial that attorney Kurtzon provided an opinion to the board on the question of whether the association could pay reserve expenses from the operating account and then have the operating account reimburse the reserve fund.

¶ 122 As is a theme in this appeal, the record is entirely inadequate for our review of this argument. There is no report of the proceedings of the four-day hearing during which evidence related to the court's decision would have been heard. Therefore, we cannot know what evidence the court did or did not hear.

¶ 123 Further, although defendants assert that Grossman's testimony provided the requisite evidence to support their argument, they again cite to only a small portion of an exhibit that neither reflects when the testimony was heard nor the context in which was given. Defendants claim that the following testimony by Grossman is uncontradicted and shows that the board did obtain an opinion from the associations attorney and auditors regarding the challenged practice:

"Q. Do you recall whether Mr. Kurtzon has ever issued an opinion on interfund transfers?

A. [Grossman:] Mr. Kurtzon did give us his opinion that it was appropriate, but the auditors also said it was appropriate."

Given the insufficiency of the record, we do not know whether this evidence was uncontradicted as defendants assert. Moreover, it was for the trial court to determine the credibility of witnesses and weight to be given to testimony. *Goldberg*, 2012 IL App (1st) 110620, ¶ 60. Therefore, even assuming *arguendo* that Grossman's testimony was uncontradicted, we cannot, on this record, reverse the court's apparent finding that Grossman was not credible. The court did not err when it ruled that the board breached its fiduciary duty by using the operating fund to pay reserve expenses and reimbursing the operating fund from the reserve fund.

¶ 124 F. Notice Procedures

¶ 125 Defendants lastly argue that the trial court erred as a matter of law when it ruled that the association's procedures in notifying resident unit owners of board meetings violated the declaration. The association's practice was to mail notice of board meetings to nonresident unit owners but to deliver such notices to resident unit owners by leaving the notices in front of the unit owners' doors. The court held that defendants violated section 5.06(e) of the declaration by failing to mail notices of board meetings to each unit owner and enjoined defendants from failing to mail such notices as required by section 5.06(e).

¶ 126 Section 5.06(e) of the declaration requires:

"All meetings of the Board shall be open to attendance by any Unit Owner and notice of such meetings shall be *mailed* no later than forty-eight (48) hours prior to such

meeting unless a written waiver of such notice is signed by the Unit Owner entitled to such notice prior to the convening of such meeting." (Emphasis added.)[7]

Section 18(a)(9) of the Condominium Property Act provides that "notice of [board] meetings shall be *mailed or delivered* at least 48 hours prior thereto, unless a written waiver of such notice is signed by the person or persons entitled to such notice." (Emphasis added.) 765 ILCS 605/18(a)(9) (West 2004).

¶ 127    Defendants assert that there is a conflict between the declaration requirement that notices be "mailed" and the Act's provision that notices may be "mailed or delivered." They argue, therefore, that pursuant to section 4.1(b) of the Act, the Act preempts the declaration, notices may be mailed or delivered and defendants' procedures for delivering the notices are proper.

¶ 128    Section 4.1(b) of the Act provides:

"Except to the extent otherwise provided by the declaration or by other condominium instruments recorded prior to the effective date of this amendatory Act of 1984, in the event of a conflict between the provisions of the declaration and the bylaws or other condominium instruments, the declaration prevails except to the extent the declaration is inconsistent with this Act." 765 ILCS 605/4.1(b) (West 2004).

Section 4.1(b) does not apply here. It only applies "in the event of a conflict" between the declaration and the "bylaws or other condominium instruments." In that situation, section 4.1(b) provides that the declaration prevails over the bylaws or other instruments, unless it conflicts with the Act, in which case the Act prevails. Here, there is no conflict between the declaration and the bylaws or other condominium instruments. Accordingly, section 4.1(b) does not apply. The notice provision in the declaration stands. The court did not err in finding that defendants breached their fiduciary duty in failing to mail all notices of board meetings.


¶ 129                                    CONCLUSION
¶ 130    For the reasons stated above, we affirm the decision of the trial court.


¶ 131    Affirmed.


¶ 132    PRESIDING JUSTICE GORDON, specially concurring.
¶ 133    I agree with the result of the majority; however, I must write separately as to the issue concerning the trial court's finding that defendants' conduct was grossly negligent in that they intentionally failed to act in the face of a known duty, demonstrating a conscious disregard for their duties. I agree with the trial court's ruling, but disagree in the manner in which the majority explains this concept in its decision.

---

[7]As the court pointed out in its decision, section 5.05 of the declaration provides that "[e]xcept as otherwise provided" in the declaration, "notice of meetings required to be given may be delivered either personally or by mail." However, section 5.05 applies generally to all meetings while section 5.06(e) of the declaration specifically governs board meetings. Therefore, section 5.06(e) controls the notice requirements for board meetings in the declaration.

¶ 134 First, the majority writes that the trial court did not err in addressing the question of whether defendants were grossly negligent in their violations of the declaration and the Condominium Property Act. The trial court never addressed this question in reference to the Condominium Property Act because it has nothing whatsoever to do with the Condominium Property Act. The issue is only addressed to the declaration by the trial court.

¶ 135 Second, the majority writes (*supra* ¶ 108) that "we must presume that the court had sufficient basis for addressing whether defendants' conduct was grossly negligent" without citation of authority. I know of no authority that gives the majority the right to presume a trial court's basis.

¶ 136 The trial court found that the board of directors breached its fiduciary duty, and once that finding is made to a particular director, that director is individually liable to the unit owners. *Board of Managers of Weathersfield Condominium Ass'n v. Schaumburg Ltd. Partnership*, 307 Ill. App. 3d 614, 622 (1999) (citing *Wolinsky v. Kadison*, 114 Ill. App. 3d 527, 533-34 (1983)).

¶ 137 However, in the case at bar, the defendants argued as an affirmative defense that the exculpatory clause in section 5.10 of the declaration shields them from liability because it states:

> "Neither the members of the Board nor the officers of the Association shall be liable to the Unit Owners for any mistake of judgment or for any other acts or omissions of any nature whatsoever as such Board members and officers except for any acts or omissions found by a court to constitute gross negligence or fraud ***."

¶ 138 The plaintiff in this case did not seek damages against individual board members and only seeks a declaration that their actions as a board breached their fiduciary duties. The trial court in its decision answered the defendant board's affirmative defense, which stated that they cannot be individually liable to the unit owners because of the exculpatory clause in the declaration. The trial court answered this argument even though it was not at issue at this point in time, finding, as I stated above, that defendants' conduct was grossly negligent in that they intentionally failed to act in the face of a known duty, demonstrating a conscious disregard for their duties, citing *Sherman v. Ryan*, 392 Ill. App. 3d 712, 730 (2009). This finding was made even though once a director breaches his fiduciary duty he or she is individually liable to the unit owners notwithstanding his or her negligence. The trial court's finding that answered defendants' affirmative defense provides a road map for the parties, which could shorten any future litigation should unit owners seek damages in the future against individual board members.