**CITY OF JOLIET, ILLINOIS,**
**Plaintiff–Appellee,**

v.

**NEW WEST, L.P., et al., Defendants–**
**Appellants.**

No. 15–2183

United States Court of Appeals,
Seventh Circuit.

Argued January 11, 2016

Decided June 17, 2016

James R. Figliulo, Carl Gigante, Stephanie Jones, Attorneys, Figliulo & Silverman, P.C., Chicago, IL, for Plaintiff-Appellee.

Theodore R. Tetzlaff, Attorney, Tetzlaff Law Offices, LLC, Chicago, IL, for Defendants-Appellants.

Before EASTERBROOK, WILLIAMS, and SYKES, Circuit Judges.

EASTERBROOK, Circuit Judge.

For more than a decade, the City of Joliet, Illinois, has been attempting to condemn the two buildings of the Evergreen Terrace housing complex. In 2005 it filed a condemnation action in state court, and the proceeding was removed to federal court. New West, the complex's owner, went on the offensive with a suit of its own under the Fair Housing Act and other federal statutes. We concluded in *New West, L.P. v. Joliet*, 491 F.3d 717 (7th Cir. 2007), and *Joliet v. New West, L.P.*, 562 F.3d 830 (7th Cir. 2009), that no rule of federal law unconditionally blocks the condemnation action, and we directed the district court to decide it with dispatch. 491 F.3d at 721; 562 F.3d at 839.

About three and a half years after the second of these decisions, the condemnation suit finally went to trial. It took 100 days of court time, spread over more than a year and a half of calendar time. The district court then issued a lengthy opinion holding that Joliet is entitled to possess (and demolish) Evergreen Terrace. 2014 WL 4667254, 2014 U.S. Dist. Lexis 130800 (N.D. Ill. Sept. 17, 2014). This decision resolved the merits but not the amount of compensation. Illinois law (which applies under Fed. R. Civ. P. 71.1(k)) requires a jury for the valuation decision, though not for the decision whether the government is entitled to take the property. 735 ILCS 30/10-5-5(a). A jury concluded that New West and its affiliates (and lenders) are entitled to $15,077,406 as just compensation. After additional delay caused by post-decision motions practice in the district court, the controversy has made its way back to us.

New West (as we call all appellants collectively) contends that Evergreen Terrace is not dilapidated and that the City's suit should have been rejected on that ground, and on the further ground that razing the buildings would have a disparate impact on its predominantly black tenants, in violation of the Fair Housing Act. The district judge, as trier of fact, rejected both of these arguments. His conclusions—including the conclusions about the nonexistence of discriminatory intent or disparate impact—are findings of fact for the purpose of appellate review. See *Pullman–Standard v. Swint*, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). This means that they must stand unless clearly erroneous. See Fed. R. Civ. P. 52(a)(6); *Anderson v. Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). We

hold that none of the critical findings is clearly erroneous.

A lengthy recitation of the facts is unnecessary. Anyone with a craving for detail has only to read the district court's opinion. The appeal can be resolved in considerably fewer words.

The judge found that Joliet is entitled to condemn the complex for two reasons: first, it is dilapidated and crime-ridden; second, the City plans to use the land to extend the existing Riverwalk park along the Des Plaines River. 2014 WL 4667254, at *9–16, 2014 U.S. Dist. Lexis 130800 at *33–57. The findings are supported by testimony, data (such as the number of crimes committed daily at Evergreen Terrace), the fact that an extension of the park has been planned since 1990, and a report from the Department of Housing and Urban Development. New West says that the judge should have drawn inferences more favorable to its position. Perhaps the judge could have ruled for New West, but the record contains far too much evidence in Joliet's favor for a court of appeals to declare the judge's findings to be clearly erroneous.

■ This leaves the question whether condemnation would violate the Fair Housing Act, either because Joliet set out to discriminate against blacks (disparate treatment) or because closure of Evergreen Terrace would have an unjustified disparate impact on black residents. The district judge found that Joliet acted for reasons unrelated to race (the ones we mentioned above). *Id.* at *16–17, *17–18, 2014 U.S. Dist. Lexis 130800 at *57–63, 65–68. Although the judge recognized that one former member of the city council had made racist comments several years before the City began the condemnation suit, the judge found that other members of the council did not share those views. *Id.* at *17, 2014 U.S. Dist. Lexis 130800 at *63–64. The judge added that it would be im-

plausible to attribute anti-black intent to the City, because as part of this litigation it agreed with the Department of Housing and Urban Development to create at least 115 new low-income housing units and provide housing vouchers for all remaining residents at Evergreen Terrace, so that they could secure low-income housing at places of their choice within the City (or anywhere else in Will County).

New West contends that the judge erred in considering the settlement with HUD, but it was admissible (it is a public document of which the court could take judicial notice). True enough, the settlement is a promise, and promises sometimes are broken. But breaking one's promise to a federal agency—a promise reiterated to a federal judge—is risky, and the judge was entitled to conclude that Joliet is likely to keep this promise. The judge observed that Joliet's own redevelopment plan, adopted before it started the condemnation action, is "practically identical to the terms of the HUD settlement agreement." *Id.* *17, 2014 U.S. Dist. Lexis 130800 at *61.

According to New West, the vouchers are useless because owners will not rent to persons displaced from Evergreen Terrace. The district judge found otherwise, and once again that finding is supported by the record. Joliet had a population of 148,000 at the 2010 census, and a city of that size should not have difficulty finding room for 240 or so families with housing vouchers. The judge observed that the population of Joliet Township is about a quarter black. *Id.* at *17, 2014 U.S. Dist. Lexis 130800, at *62. Only a small fraction of the black population is affected by the closure of Evergreen Terrace, which implies that space elsewhere will be available.

■ New West relies more heavily on its disparate-impact theory than on its disparate-treatment theory. About 95% of Evergreen Terrace's residents are black,

and New West contends that this means that its closure *must* have a disparate impact. Since § 804(a) of the Fair Housing Act, 42 U.S.C. § 3604(a), forbids actions with unjustified disparate impact, see *Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.*, —— U.S. ——, 135 S.Ct. 2507, 192 L.Ed.2d 514 (2015), New West maintains that closure necessarily violates the Act.

The district judge thought that the racial composition of Evergreen Terrace is the wrong starting point. Instead the judge asked whether closure of Evergreen Terrace affects a substantial fraction of all blacks in Joliet. He answered that it does not; about 97% of the City's black residents live elsewhere, and the closure therefore would not affect the population as a whole adversely. 2014 WL 4667254, at *18, 2014 U.S. Dist. LEXIS 130800 at *66.

We agree with the district judge that the record does not demonstrate disparate impact, but for a different reason. New West sees a need to move as an injury in itself. (If the current residents of Evergreen Terrace are uninjured, there is no adverse impact.) But given the district court's findings about the dilapidated and crime-ridden nature of Evergreen Terrace, it is inappropriate to treat a move to new housing as injurious. The residents of Evergreen Terrace will be better off in the newly constructed units, or the units available with housing vouchers. Joliet has not required the residents to move any distance; the new units will be built nearby, and the vouchers can be used anywhere in Will County. Plaintiffs deem the need to move an injury only because they disagree with the district court's principal findings of fact—but, given our conclusion that those findings are supported by the record, the disparate-impact theory evaporates.

■ And that's not all. Although *Inclusive Communities Project* held that un-

justified disparate impact from housing policies violates § 804(a), it stressed the importance of considering both whether a policy exists and whether it is justified. 135 S.Ct. at 2522–24. The Court observed that "a one-time decision may not be a policy at all" (*id.* at 2523). Disparate-impact analysis looks at the effects of policies, not one-off decisions, which are analyzed for disparate treatment. The Justices added that "governmental entities ... must not be prevented from achieving legitimate objectives, such as ensuring compliance with health and safety codes." *Id.* at 2524. The district court's findings show that the condemnation of Evergreen Terrace is a specific decision, not part of a policy to close minority housing in Joliet. The judge also found that Joliet set out to achieve goals that the Supreme Court approves, and the analysis of *Inclusive Communities Project* therefore favors the City rather than New West.

New West insists that the district court's findings, no matter how well supported by the record, must be thrown out because made by a judge. New West does not contend that a property owner has a constitutional right to jury trial in a condemnation suit. Its theory, rather, is that by proceeding first with the condemnation action and deferring New West's own suit seeking damages under the Fair Housing Act, the district court violated the Seventh Amendment by making findings that will be preclusive in New West's suit for damages. See *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). The district court issued an opinion rejecting that contention, see 2012 WL 384574, 2012 U.S. Dist. LEXIS 12756 (N.D. Ill. Jan. 31, 2012), and New West wants us to resolve that subject.

That request is premature. This appeal concerns Joliet's condemnation suit, not

New West's suit under the Fair Housing Act. There is no right to a jury trial of the takings issue (as opposed to the compensation issue) in a condemnation action under Illinois law, which controls, so the decision to hold a bench trial did not violate any of New West's rights *in this proceeding*. New West predicts that the judge will dismiss its statutory suit as barred by principles of issue preclusion given the findings made in the condemnation action. If the judge does that, the Seventh Amendment argument then will be ripe.

The fact that the condemnation action and the statutory action are distinct is why this court denied New West's petition for a writ of mandamus seeking an order that would compel the district court to use a jury in the condemnation suit. The order denying the petition has no bearing on the merits of the Seventh Amendment question.*

We asked at oral argument why the district court did not empanel a jury and try the two suits together, with the condemnation issues resolved by the court and the Fair Housing Act issues by a jury. The jury also could have served an advisory role in the condemnation action. See Fed. R. Civ. P. 39(c). The answer is that no one suggested this to the district court, and the judge did not propose it on his own. It would have been fruitless to expect a jury to follow 100 days of trial spread over 18 months—but maybe the presence of a jury would have induced the judge to rein in counsel's presentations and make the trial manageable. One of the issues the judge will have to consider in the Fair Housing Act case is whether New West surrendered its right to a jury by not proposing a joint trial, or at least an advisory jury in the condemnation action. Cf. Fed. R. Civ. P. 38(d). We do not express any view on that subject. We do hope, however, that what we have said in this opinion will lead the parties to think carefully about whether a trial of the Fair Housing Act suit is necessary.

New West's other arguments do not require discussion.

AFFIRMED

---

* Here is the text of that order, issued on March 27, 2012, and previously unpublished. We set it out to facilitate understanding of our current ruling:

The petitions for a writ of mandamus are DENIED. This court directed the district judge to resolve the condemnation action first. That is at last being done, though long after we contemplated it would happen. Our opinion three years ago observed that resolution of the condemnation proceeding was already overdue, and we told the court to bring it to a "speedy" resolution. *Joliet v. New West, L.P.*, 562 F.3d 830, 839 (7th Cir. 2009). Trial of the condemnation action in December 2012 is not speedy by any means, but it is preferable to the approach proposed in the petition for mandamus, which would postpone the condemnation action indefinitely.

If, as [New West] contend[s], the Seventh Amendment prevents using resolution of issues in the condemnation proceeding as a basis of preclusion (res judicata or collateral estoppel), then there may need to be a second round of litigation. The district court thought not, observing that the condemnation proceeding and the civil-rights actions are separate suits, and that the principle of *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), deals with the sequence of decision in a single action. If the judge is right, then there will be no problem with using the findings preclusively later; if the judge is wrong, then the findings cannot be used preclusively. Either way, there is no reason to delay the condemnation trial further.

The federal judiciary should be able to resolve a condemnation proceeding in less than seven years. We urge the district court to expedite the trial that has been scheduled for next December.