In the

# United States Court of Appeals
## For the Seventh Circuit

No. 17-2865

NEW WEST, L.P., and NEW BLUFF, L.P.,

*Plaintiffs-Appellants*,

*v.*

CITY OF JOLIET, ILLINOIS, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 05 C 1743 — **Charles R. Norgle**, *Judge*.

ARGUED MAY 15, 2018 — DECIDED MAY 23, 2018

Before EASTERBROOK, SYKES, and BARRETT, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. This is the fourth published appellate opinion in a long-running dispute between New West and the City of Joliet. New West filed this suit in March 2005, contending that the City had interfered with the way in which it set rents at the Evergreen Terrace apartment complex under the national government's mark-to-market program for rates at subsidized apartments. New West also contended that the City was violating the Fair Housing Act

(FHA), 42 U.S.C. §§ 3601–31, and many other rules of state and federal law. Our first decision held that these claims belong to New West, not its renters (as the district court had held). 491 F.3d 717 (7th Cir. 2007).

In October 2005 the City filed an eminent-domain suit in state court, proposing to acquire the complex, raze it, and add the land to an existing public park. New West removed the action to federal court, where the Department of Housing and Urban Development joined it in contending that a recipient of federal financing is immune from the power of eminent domain. Our second decision rejected that contention and directed the district court to resolve the condemnation proceeding with dispatch. 562 F.3d 830 (7th Cir. 2009).

More than three years later, the condemnation trial began. It ran 100 trial days over 18 calendar months. The judge found that Joliet is entitled to take ownership of the apartment complex; a jury then set the amount of just compensation at about $15 million. Our third decision affirmed the final judgment. 825 F.3d 827 (7th Cir. 2016). The trial lasted so long in large part because New West contended that condemnation would violate the Fair Housing Act. (New West relied on 42 U.S.C. §§ 1982 and 1983 in addition to the FHA; we refer to its theories collectively as the FHA claim.) We held that New West had not shown a violation. *Id.* at 829–30. New West predicted that the judge would use the result of the condemnation suit to block its pending suit against the City, thus violating the Seventh Amendment by depriving it of a jury trial. We replied that this contention was unripe and should be presented later if New West's prediction proved to be true. *Id.* at 830–31.

It did prove to be true. The district judge dismissed New West's suit as barred by the preclusive effect of the final decision in the City's condemnation action. New West then took this appeal. It concedes that ordinary principles of issue preclusion (collateral estoppel) prevent relitigation of the FHA claim. But New West contends that, under *Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962), and *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959), the Constitution entitles it to a new trial anyway, lest the judgment in a bench trial displace the jury's constitutional role.

The problem with New West's argument is that *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979), held that *Dairy Queen* and *Beacon Theatres* are not constitutional decisions. They instead concern the exercise of discretion to determine the order in which the issues presented in a single suit are resolved. Judges usually ought to put jury-trial issues ahead of bench-trial issues because that order is most respectful of constitutional interests, not because the Constitution commands that order. And it follows, *Parklane* adds, that when issues arise in separate trials, there is no constitutional problem with using the first trial's outcome to resolve the second, even if the first trial was to a judge. 439 U.S. at 333–37.

*Parklane* entailed nonmutual preclusion: even though not a party to the first suit, the plaintiff in the second claimed its benefit. A majority of the Court concluded that offensive nonmutual issue preclusion is both proper as a matter of common-law development and consistent with the Constitution. *Id*. at 326–33. Nonmutual preclusion is not at issue in the dispute between New West and Joliet, making this case easier than *Parklane*.

New West does not deny that *Parklane* would be disposi-
tive if the condemnation suit had been resolved by a state
court. If the suits had been in two judicial systems, they
could not have been coordinated. But because both suits
ended up in federal court, and before the same judge, New
West believes that the judge should have put the condemna-
tion action on hold while setting its FHA suit for a jury trial.

The district court did not have that discretion. We di-
rected it to resolve the condemnation suit first, because the
City professed concern about ongoing crime and deteriora-
tion at the apartment complex. The FHA suit could be de-
ferred because it deals only with how accounts are settled
among the adversaries—and if New West prevailed in the
condemnation action it probably would not be necessary to
resolve the FHA claim at all.

New West's current problem is of its own making. It con-
cedes that the FHA was not a compulsory counterclaim in
the condemnation suit. New West's lawyer asserted at oral
argument that it presented the FHA arguments as defenses
to the City's suit because it was afraid that, otherwise, the
judge would have deemed them forfeited or waived. That's
inconceivable. This suit began six months before the con-
demnation action; nothing in it has been forfeited or waived.
When New West imported its FHA claim into the condem-
nation action, Joliet protested, asking the judge to rule that
the FHA has no place in an eminent-domain action. Joliet
thus waived any argument that the FHA theories had to be
presented as defenses in the City's suit. New West was free
to reserve the FHA claim for this suit, where it would have
been entitled to a jury trial. Its FHA claim was resolved in a

bench trial only because New West insisted on presenting it there.

The condemnation action could have been resolved speedily by leaving the FHA claim to this suit. Once we held in 2009 that federal financing did not block the use of state and local eminent-domain powers, the condemnation claim could have gone to trial with a simple question: Was the taking for a public purpose? Then the FHA claim could have been resolved, by a jury, in this suit. But New West wanted the FHA to be treated as a defense to condemnation, and the district court acquiesced. New West's own choice is responsible for the fact that a judge rather than a jury brought the FHA claim to a conclusion.

AFFIRMED