2021 IL App (1st) 192402-U

FIRST DISTRICT
FIRST DIVISION
December 30, 2021

No. 1-19-2402

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| MARZIEH BASTANIPOUR, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 14 L 004517 |
| | ) | |
| 55 W ERIE CONDOMINIUM ASSOCIATION, PHOENIX | ) | Honorable |
| RISING MANAGEMENT GROUP, TONY MARENGO and | ) | Alison C. Conlon, |
| JENNIFER BRATZEL, | ) | Judge Presiding. |
| | ) | |
| Defendants-Appellees. | ) | |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Hyman and Justice Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Summary judgement was proper where a condominium unit owner's claims based on discriminatory treatment and the refusal to provide timely reimbursement, perform repairs, and include comments in meeting minutes failed to state a viable cause of action.

¶ 2    In this condominium dispute, plaintiff Marzieh Bastanipour appeals *pro se* the grant of summary judgment in favor of defendants the 55 West Erie Condominium Association (Association), Phoenix Rising Management Group (Phoenix Rising), Tony Marengo, and Jennifer

Bratzel (collectively referred to as "defendants") on her claims arising from their discriminatory treatment, purported failure to reimburse her for expenses incurred and to make necessary repairs, and excluding her comments from meeting minutes. Bastanipour also appeals the trial court's rulings denying the entry of a default judgment, refusing to deem facts admitted, and rejecting her request to transfer the case back to the law division. We affirm.

¶ 3                                    I. Background

¶ 4        Bastanipour owned unit 1E at the 55 West Erie Condominium (55 West Erie) building and had moved into her unit in August 2008.[1] The Association's declaration and bylaws governed Bastanipour's unit and the building's common areas. In 2009, Bastanipour served as the Association's Board of Director's (Board) president. Beginning on December 17, 2012, Phoenix Rising served as the building's property management company and Bratzel, who worked for Phoenix Rising, was the building's property manager. In 2013, Marengo served as the Board's secretary and resided in the building.

¶ 5        On April 23, 2014, Bastanipour commenced this action *pro se* based on defendants' alleged failure to provide reimbursement for a landscaping project she completed at the building, refusal to remediate a sewage issue that caused a backup issue in her bathtub and a "foul odor" in her unit, refusal to remove moisture on the interior brick wall in her kitchen from a broken gutter "leak" that caused mold in her unit, and making "racial & ethnic remarks" during meetings that created a "negative environment."

¶ 6        More than two years later on November 15, 2016, Bastanipour filed her sixth amended complaint, which is the subject of this appeal. In the amended complaint, Bastanipour pled a count

---

[1]On June 29, 2015, the Association received an order of repossession for Bastanipour's unit due to unpaid assessments totaling $30,466.

against each defendant for: (1) violations of the Fair Housing Act (42 U.S.C. § 3601); (2) breach of the Condominium Property Act (765 ILCS 605/1 *et seq.* (West 2014)); (3) "breach of contract for violation of declaration of condominium;" (4) fraudulent misrepresentation; (5) civil conspiracy to deprive her of her rights; and (6) intentional infliction of emotional distress against only the Association, Marengo, and Bratzel. Bastanipour sought compensatory damages in excess of $300,000 and "punitive damages for intentional and malicious conduct in excess of $600,000" for each count. Bastanipour's retained counsel filed the sixth amended complaint on her behalf.

¶ 7        Based on defense motions, the trial court dismissed the breach of the Condominium Property Act counts against Phoenix Rising and Bratzel and the breach of contract for violating the Association's declaration count against Bratzel. The parties continued to litigate the matter, including deposing Bastanipour and participating in mandatory arbitration, which found "in favor of all defendants on all counts & against Plaintiff." Bastanipour rejected the arbitrator's finding, and defendants moved for summary judgment. Following a hearing where Bastanipour appeared *pro se*, the trial court granted summary judgment in favor of defendants "on all remaining counts."

¶ 8        Although Bastanipour filed her briefs in this appeal using the forms approved by the Illinois Supreme Court, her allegations in those briefs are convoluted and deciphered by this court as best as possible with the aid of defendants' brief and the record.

¶ 9                                II. Analysis

¶ 10                        A. Default Judgment Rulings

¶ 11        Bastanipour first argues that the trial court should have entered a default judgment against Bratzel and erred in "allowing defendants to answer to the complaint after nearly one year as there [were] three motions for default and *** and one motion [was] not ruled on yet."

¶ 12        A trial court may enter a default judgment "for want of an appearance, or for failure to

plead, but the court may in either case, require proof of the allegations of the pleadings upon which relief is sought." 735 ILCS 5/2-1301(d) (West 2014). A default judgment is considered "a drastic measure, not to be encouraged and to be employed with great caution, only as a last resort." *Biscan v. Village of Melrose Park Board of Fire & Police Commissioners*, 277 Ill. App. 3d 844, 848 (1996). This court reviews a trial court's ruling on a motion for default for an abuse of discretion or a denial of substantial justice. *Greer v. Board of Education of City of Chicago*, 2021 IL App (1st) 200429, ¶ 8. A court abuses its discretion "when a ruling is arbitrary, fanciful, or one that no reasonable person would make." *Evans v. Cook County State's Attorney*, 2021 IL 125513, ¶ 41.

¶ 13 In this case, the trial court did not abuse its discretion in denying Bastanipour's request for an "immediate *ex parte* motion for a default judgment" against Bratzel. Bastanipour failed to properly serve Bratzel for more than two years, resulting in the trial court entering an order granting her "leave to obtain another alias summons – Jennifer Bratzel will be DWP'd if not served by alternative means by December 30, 2016." Bratzel was ultimately served, effective on December 28, 2016**.** Bratzel did not file her answer and motion to dismiss until February 14, 2017.[2] After that on February 21, 2017, Bastanipour filed an "emergency motion for entry of *ex parte* default judgment" against Bratzel, arguing she failed to file her appearance by the return date (January 13, 2017) and "filed her answer on February 14, 2017, *over a month after it was required to be filed.*" (Emphasis in original.) But by the time that Bastanipour filed the "emergency" motion, Bratzel had already answered the complaint. The trial court subsequently granted Bratzel's motion to deem her answer and motion to dismiss as timely filed. Under these facts, the trial court did not abuse its discretion in denying the "emergency" motion for a default judgment. See *City of Joliet*

---

[2]Because The Law Offices of Ed Kozel previously filed an appearance on behalf of all defendants (including Bratzel), Bratzel's retained counsel was granted leave to substitute as counsel on February 3, 2017, and filed an answer and motion to dismiss within two weeks on February 14, 2017.

*v. Szayna*, 2016 IL App (3d) 150092, ¶ 47 (a "default judgment" may be entered where a party failed to answer the complaint).

¶ 14    Bastanipour also appears to argue that a default judgment should have been entered against the other named defendants for failing to timely file responsive pleadings. In response to what appears to be Bastanipour's last motion for a default judgment, the trial court granted defendants "leave to answer or otherwise plead by May 31, 2016, if Defendants fail to answer or otherwise plead, plaintiff's allegations are deemed admitted." Because defendants complied with that order, Bastanipour failed to demonstrate any abuse of discretion in denying her request for a default judgment. See *Midwest Builder Distributing, Inc. v. Lord & Essex, Inc.*, 383 Ill. App. 3d 645, 665 (2007) (Illinois public policy prefers deciding "cases on the merits rather than dismissing them on purely procedural grounds.").

¶ 15                                    B. Summary Judgment Rulings

¶ 16    Bastanipour claims that the trial court erred in granting summary judgment in defendants' favor on her counts for (1) violations of the Fair Housing Act, (2) breach of the Condominium Property Act, (3) breach of contract for violation of the condominium declaration, (4) fraudulent misrepresentation, (5) civil conspiracy to deprive her of her rights, and (6) intentional infliction of emotional distress.

¶ 17    The purpose of summary judgment "is not to try a question of fact, but rather to determine whether a genuine question of material fact exists." *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 162 (2007). Summary judgment is appropriate if the pleadings, depositions, admissions, and affidavits on file establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2014); *Guns Save Life, Inc. v. Ali*, 2021 IL 126014, ¶ 14. The pleadings, depositions, admissions, and affidavits are construed

strictly against the movant and liberally in favor of the opponent when ruling on a motion for summary judgment. *Thai v. Triumvera 600 Naples Court Condo. Ass'n*, 2020 IL App (1st) 192408, ¶ 38. We review a trial court's order granting summary judgment *de novo. Id.*

¶ 18                                    1. Fair Housing Act

¶ 19        As to the Fair Housing Act claims, Bastanipour argues that defendants' discriminatory[3] conduct "made it extremely difficult for her to enjoy living in her condo."

¶ 20        Section 3604(a) of the Fair Housing Act provides, in relevant part, that "it shall be unlawful *** (t)o *** make unavailable or deny *** a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a). In deciding Fair Housing Act claims, courts borrow from the analysis used in federal employment discrimination cases. *Turner v. Human Rights Comm'n*, 177 Ill. App. 3d 476, 487 (1988).

¶ 21        Discrimination claims may be based on either a "disparate impact" or "disparate treatment" theory. *City of Joliet, Illinois v. New West, L.P.*, 825 F.3d 827, 829 (7th Cir. 2016). Here, we decipher Bastanipour's claims as implicating a disparate treatment theory, which is commonly known as intentional discrimination. Disparate treatment may be demonstrated "either directly, through direct or circumstantial evidence, or indirectly, through the inferential burden shifting method known as the *McDonnell Douglas* test." *Kormoczy v. Secretary, U.S. Department of Housing & Urban Development on Behalf of Briggs*, 53 F.3d 821, 824 (7th Cir. 1995). "The *McDonnell Douglas* test recognizes that direct proof of unlawful discrimination is rarely available." *United States v. Badgett,* 976 F.2d 1176, 1178 (8th Cir. 1992). Some courts apply the *McDonnell Douglas* test in Fair Housing Act cases without determining whether the plaintiff can survive summary judgment under the direct method. *Cavalieri-Conway v. L. Butterman &*

[3]Bastanipour stated that she "is not an American-born citizen but originally came from Iran."

*Associates*, 992 F. Supp. 995, 1005 (N.D. Ill. 1998), *aff'd sub nom. Cavalieri v. L. Butterman & Associates*, 172 F.3d 52 (7th Cir. 1999).

¶ 22        Under the *McDonnell Douglas* test, the plaintiff bears "the burden of proving by a preponderance of the evidence a *prima facie* case of unlawful discrimination," which requires a showing that "1) the petitioner is a member of a protected group; 2) the petitioner applied for an opportunity and was qualified for the opportunity; 3) the opportunity was denied to the petitioner; and 4) after the opportunity was denied, the opportunity was offered to others not in the protected group." *Turner*, 177 Ill. App. 3d at 487. Here, we consider whether Bastanipour can satisfy the third element, which is also interpreted as requiring an adverse action by the defendants. See *Equal Employment Opportunity Comm'n v. Phoebe Putney Memorial Hospital, Inc.*, 488 F. Supp. 3d 1336, 1351 (M.D. Ga. 2020). In other words, Bastanipour must demonstrate a triable issue as to whether she suffered an adverse action due to defendants' discrimination against her. *Grosso v. UPMC*, 857 F. Supp. 2d 517, 540 (W.D. Pa. 2012).

¶ 23        Bastanipour identifies the following four "adverse" actions that she alleges demonstrates defendants' "disparate treatment:" refusal to (1) reimburse her for landscaping materials and work performed, (2) correct a water leak causing moisture damage to her interior brick wall in the kitchen, (3) perform plumbing repairs causing sewage water to bubble up into her bathtub, and (4) incorporate her comments in the Board's meeting minutes.

¶ 24        As to the reimbursement for landscaping costs, there was no adverse action because the Association reimbursed Bastanipour for the costs she incurred to landscape the building. Moreover, she offered no evidence demonstrating that "she got reimbursed more slowly *** because of differential treatment."

¶ 25        Regarding the "accumulation of water" "from a faulty gutter" that caused mold and

moisture onto the interior exposed brick wall in Bastanipour's kitchen, a tuckpointing contractor examined her area and identified the presence of "salt damaged bricks" and "efflorescence," which results from salt deposits on bricks. The estimated cost to clean the efflorescence was $300. The Association consulted with its attorney to determine the party responsible for cleaning the efflorescence, who advised that the individual unit owners were responsible "for the maintenance, repairs and replacements within the Unit, including the exposed brick walls." Bastanipour offered no evidence of a "disparate treatment" on the basis that this repair was performed for a different unit owner and paid by the Association.

¶ 26    As to the plumbing issue, Bastanipour claimed that sewage from the basement infiltrated into her bathtub, causing "foul odors" that "caused may unit owners to look down their noses" at her. Bastanipour acknowledged that the Association arranged for a plumber to investigate the plumbing issues at the building but claims that the plumbing repairs documented in an invoice were completed for a different unit and "they never dealt with me, never came inside." But the description on the invoice of the work performed indicates otherwise. Moreover, she acknowledged that after the plumbing repair on August 29, 2013, she no longer experienced the water bubbling up into her bathtub from the basement. Because the plumbing issue was repaired and at the Association's expense, Bastanipour failed to identify an adverse action.

¶ 27    Finally, Bastanipour argues that her comments during a board meeting where she brought mold issues to the Board's attention[4] should have been incorporated into the meeting minutes. But she did not respond to Marengo's (the Board's secretary) request to provide the omitted information for potential inclusion into the minutes as an addendum. Moreover, Marengo, who

---

[4]During this meeting, Bastanipour brought a bag of dishes with mold to provide a visual of the issue.

had also previously served as the Board's president, averred that the "Secretary does not take down every comment by each unit owner for the minutes. The minutes only contain action items for the Board moving forward." Bastanipour again failed to demonstrate an adverse action against her regarding the alleged failure to incorporate her comments into the meeting minutes.

¶ 28    Because Bastanipour failed to show a triable issue identifying any adverse action, her violation of the Fair Housing Act claims cannot survive summary judgment.

¶ 29    2. Condominium Property Act and Condominium Declaration

¶ 30    Bastanipour argues that a genuine issue of material fact exists as to whether the Association and Marengo violated the Condominium Property Act and the condominium declaration by breaching their fiduciary duties[5] for failing to "provide for the 'operation, care, upkeep, maintenance, replacement and improvement of the common elements' " of the building, causing "mold and sewer water in her condo."

¶ 31    The Condominium Property Act (765 ILCS 605/1 *et seq.* (West 2014)) regulates the operation of condominium associations. *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2014 IL App (1st) 111290, ¶ 51. Section 18.4 of the Condominium Property Act sets forth the duties of a condominium board of managers, which include providing for "the operation, care, upkeep, maintenance, replacement and improvement of the common elements." 765 ILCS 605/18.4 (a) (West 2014). In performing their duties, "the officers and members of the board *** shall exercise the care required of a fiduciary of the unit owners." *Id.*; *Palm*, 2014 IL App (1st) 111290, ¶ 94. The Board and its members must "act in a manner reasonably related to the exercise of that duty,

---

[5]Bastanipour's "breach of contract for violation of declaration of condominium" count alleged that defendants breached their fiduciary duties owed to her. Due to the similarities between this count and her breach of the Condominium Property Act count, we will address them together.

and the failure to do so will result in liability for the board and its individual members." *Palm*, 2014 IL App (1st) 111290, ¶ 111.

¶ 32    In support of her breach of fiduciary duties claim, Bastanipour again relies on the four previously identified issues concerning the reimbursement for landscaping costs, moisture on the kitchen brick wall, plumbing defects causing sewage backflow, and the omission of her comments in the meeting minutes. The Association's new policies regarding reimbursements after hiring the management company provides no basis to find a breach of fiduciary duties. Likewise, Bastanipour points to nothing regarding the manner in which Board meeting minutes were recorded to raise a breach of fiduciary duty. As to the repairs, the Association timely addressed her requests for the repairs, satisfying any fiduciary duty. The Association also sought and acted pursuant to the advice of counsel regarding the party responsible for cleaning the efflorescence and paid for the plumbing work in the basement common area. See *id.* (no breach of fiduciary duty where the board properly exercises its business judgment in interpreting its own declaration). Therefore, Bastanipour failed to set forth a triable issue as to a breach of a fiduciary duty to support a violation of either the Condominium Property Act or breach of contract for violating the condominium declaration.

¶ 33                                 3. Fraudulent Misrepresentation

¶ 34    Bastanipour argues that the fraudulent misrepresentation claim survives summary judgment based on Bratzel's and Marengo's false promises. In the complaint, she alleged that during the August 13, 2013, board meeting, she "reiterated that her unit was being damaged" by water penetrating the outside walls of the building into her unit and "Bratzel explicitly promised that she would take care of the problem as it affected [her] unit." Bastanipour also alleged that Bratzel's statements "were repeated and echoed by Marengo, who also ran the Association's board meetings." She claims that those promises to have the water and plumbing issues resolved "were

false at the time they were made." Through Bratzel's and Marengo's relationship with the Association and Phoenix Rising, Bastanipour asserted they were equally liable for fraudulent misrepresentation.

¶ 35     Even assuming *arguendo* that Bastanipour's pleading can be construed broadly to state a cause of action for fraudulent misrepresentation, any statements "which concern future or contingent events, expectations, or probabilities, rather than present or pre-existing facts, are not actionable." *Wilde v. First Federal Savings & Loan Ass'n of Wilmette*, 134 Ill. App. 3d 722, 732 (1985). Therefore, Bratzel's and Marengo's purported promises "to take care" of the problems concerned a future expectation that cannot serve as grounds for fraudulent misrepresentation against any defendant.

¶ 36                                    4. Civil Conspiracy

¶ 37     Bastanipour contends that she pled a viable cause of action for a civil conspiracy because defendants "conspired together to deprive [her] of her civil rights to own a condo, live in her condo, to be able to enjoy living in her condo, and to be treated fairly by the Association, the Board, and the management" by "refusing to provide her with the services (e.g., repair of building water-leaks) that were available to other residents; destaining her, ignoring her requests, and treating her with contempt; charging her for repairs done to other units, but not to hers; and intentionally not informing her of official notices about actions that would significantly affect her repairs that had been promised her."

¶ 38     A civil conspiracy "is based upon intentional activity," which requires proof that "a defendant knowingly and voluntarily participates in a common scheme to commit an unlawful act or a lawful act in an unlawful manner." *Adcock v. Brakegate, Ltd.,* 164 Ill. 2d 54, 64 (1994). A claim of a civil conspiracy requires the plaintiff to "allege an agreement and a tortious act

committed in furtherance of that agreement." Because Bastanipour relied on conclusory statements and failed to sufficiently plead the existence of any agreement, which is "a necessary and important" element of a civil conspiracy cause of action, or any act committed in furtherance of any agreement, summary judgment in favor of defendants was warranted. *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 133 (1999).

¶ 39                                5. Intentional Infliction of Emotion Distress

¶ 40        Bastanipour's complaint concluded with an allegation of intentional infliction of emotional distress against defendants because "their actions and decisions [ ] made it impossible for [her] to have her unit repaired and to enjoy living in it."

¶ 41        To state a claim for intentional infliction of emotional distress, a plaintiff must prove that "(1) the defendant's conduct was extreme and outrageous, (2) the defendant intended his conduct to cause severe emotional distress or knew that there was a high probability that his conduct would cause severe emotional distress, and (3) the defendant's conduct did, in fact, cause severe emotional distress to the plaintiff." *DiPietro v. GATX Corp.*, 2020 IL App (1st) 192196, ¶ 50. A defendant's conduct is considered "extreme and outrageous" " 'only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Schweihs v. Chase Home Finance, LLC*, 2016 IL 120041, ¶ 51 (*quoting* Restatement (Second) of Torts § 46 cmt. d, at 73 (1965)). The alleged "extreme and outrageous" conduct is judged by an objective standard. *Duffy v. Orlan Brook Condominium Owners' Ass'n*, 2012 IL App (1st) 113577, ¶ 36.

¶ 42        Bastanipour claims that Bratzel's "numerous deceptive and false assertions" that her unit would be repaired and Marengo's threats in response to her requests for repairs were "extreme and

- 12 -

outrageous." Viewed objectively based on all the facts and circumstances of this case, we find that Bastanipour failed to plead any "extreme and outrageous" conduct performed by defendants. Therefore, the intentional infliction of emotion distress counts cannot withstand a motion for summary judgment.

¶ 43    In sum, because Bastanipour failed to demonstrate a genuine issue of material fact as to any of her claims alleged in the sixth amended complaint and defendants are entitled to judgment as a matter of law, the trial court properly granted summary judgment in defendants' favor.

¶ 44                                    C. Procedural Issues

¶ 45    Bastanipour argues that the trial court abused its discretion in refusing to deem facts admitted and declining to conditionally transfer the case to the law division.

¶ 46    Under Illinois Supreme Court Rule 216(c) (Ill. S. Ct. R. 216(c) (eff. July 1, 2014)), "facts are deemed admitted if a party is served with a request to admit and fails to object or reply within 28 days." *P.R.S. International, Inc. v. Shred Pax Corp.*, 184 Ill. 2d 224, 232 (1988). Because defendants timely responded to Bastanipour's motion to deem facts admitted, there can be no basis to find that the trial court erred in denying her request to deem facts admitted or denying her request for reconsideration. Ill. S. Ct. R. 216(a) (eff. July 1, 2014); *Vision Point of Sale, Inc. v. Haas*, 226 Ill. 2d 334, 358 (2007).

¶ 47    Finally, Bastanipour originally filed this matter in the law division, but the trial court transferred it to the municipal division, stating "case value" as the reason for the transfer. Bastanipour provided no basis for this court to find that the trial court erred in denying her "conditional motion" to transfer the case back to the law division if the trial court determined that the proper amount of compensatory and punitive damages exceeded the jurisdictional limit in the municipal division.

¶ 48                                III. CONCLUSION

¶ 49       For the foregoing reasons, we affirm the trial court's rulings denying Bastanipour's motions

for a default judgment, to deem facts admitted, and to transfer the case to the law division. We also

affirm the grant of summary judgment in defendants' favor.

Affirmed.